WILLIAM W. WOODS, Respondent, v. E. B. LAND, Administrator of ADAM C. WOODS, Appellant.

Kansas City Court of Appeals, April 5, 1888.

1. CONTRACT TO PAY FOR SERVICES—PRESUMPTION WHERE PARTIES OCCUPY FAMILY RELATION.—The ordinary presumption of an agreement to pay for valuable services rendered, does not obtain where the parties occupy a family relation ; and the closer this family relation is, the farther is the presumption removed.

2. —— HOW SUCH CONTRACT MUST BE MANIFESTED AND PROVED. In order to justify such a claim, an implied contract may be shown, but the evidence of it must be clear and satisfactory. Loose declarations, made to others, or even to the claimant himself, will not answer.     That which may be only an expression of intention is inadequate for the purpose.  It must have been the purpose to assume a legal obligation capable of being enforced.   There must be a recognition of a contract by both parties.   There must be an expectation, not only of the one to pay, but of the other to receive pay ; and the contract must exist at the time of rendering the service sued for.   The fact that the claimant has passed his majority does not affect the matter.

3. —— SERVICES RENDERED WITHOUT CONTRACT BY MEMBER OF FAMILY.—Services rendered by a member of a family, merely with a view to, or in expectation of, the generosity of the party for whom the services were rendered, will not support an implied *assumpsit.*

APPEAL from Platte Circuit Court, HON. JAMES M. SANDUSKY, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is a contest over the following claim presented to the probate court against the estate of Adam C. Woods by William W. Woods, his son :

"In Probate Court of Platte County, Missouri, to October term, A.D. 1886.

"Estate of Adam C. Woods, Dr. to William W. Woods.

"For work done on farm and services rendered in attending to business of deceased from January 1, 1875, to January 1, 1882, a period of seven years, at two hundred and forty dollars per year, sixteen hundred and eighty dollars; which should be credited with amounts received from deceased or retained from sale of produce of farm by permission of deceased at various times extending over the seven years, one hundred dollars per year, seven hundred dollars; balance due claimant, nine hundred and eighty dollars."

The claimant was more than twenty-one years of age at the commencement of the service. He was unmarried and lived with his father as a member of his family during the time of rendering the services and they were shown to be worth from twenty to twenty-five dollars per month. The only evidence of a contract offered by the claimant is the following:

McCombs testified: "In the spring of 1882 he heard Adam C. Woods say that he intended to give plaintiff forty acres of land for staying with him and taking care of him and not going to Kansas; that William, at his request, had remained and worked on the farm when all the rest had left home, and William had given up his intention of going to Kansas."

Henry Brown testified: "That a few days before Adam C. Woods died, he said that he had never given William Woods anything, and he intended to give him a half-interest in eighty acres of land for staying with him and caring for him, and working on the farm, and that William had only received his victuals and clothes."

J. N. Cox testified: "That, in 1885, he heard Adam C. Woods say that he intended to help William Woods, because he had stayed there and worked for him; that he had a conversation in 1885 with deceased, in which he stated that he intended to give William and Nancy something."

A. J. Conway testified: "That, in 1885, he heard

Adam C. Woods say that he intended to give his daughter and William Woods eighty acres of land; that, on account of William Woods' kindness to him, having remained with him, and in consideration of services rendered to him, he was entitled to it, and he, Adam C. Woods, intended to give it to him."

E. B. Land testified: "In 1885, I heard Adam C. Woods say that he intended to give William Woods forty acres off the west eighty, as William had stayed with him and had cared for him. Adam C. Woods had a hand on the farm with William. The farm of A. C. Woods contained two hundred and forty acres, and during the years for which compensation for services is claimed in this case, was in charge of William, who managed and controlled same, and he also made a regular hand in cultivating same. William, the plaintiff, was about forty years old at the time of the rendition of the services, and was very poor. Plaintiff married in 1883, and after that time plaintiff worked on his father's farm and cultivated same on shares; that the land of deceased was heavily mortgaged during the time of these services and up to his death."

Mrs. M. J. Harris testified: "That, in 1885, she heard Adam C. Woods say that he intended to give forty acres of land to William; was to give it by will."

Robert Bartlett testified: "That he had a conversation with deceased in which he stated that he intended to give William something for his services, but was then unable to do so. Deceased also said he would give him (witness) something."

Jas. W. Coburn and Traber & Gibson, for the appellant.

I. In an action by a son against his father for wages after the son's arrival of age, the presumption of law is, that the sevices were gratuitous. In order to recover respondent need not show an express promise, but must affirmatively show that there was some expectation or understanding on both sides that the services

were to be paid for. 26 Cent. Law Jour. 51, 184; *Guenther v. Birkicht's Adm'r*, 22 Mo. 439; *Smith v. Myers*, 19 Mo. 434; *Hart v. Hart's Adm'r*, 41 Mo. 445; *Cowell v. Roberts*, 79 Mo. 218; *Gardner's Adm'r v. Schooley*, 25 N. J. Eq. 150; *Prickett v. Prickett*, 20 N. J. Eq. 478; 15 Cent. Law Jour. 26; *Cooper v. Cooper*, 3 Ill. App. 492; *Sanders v. Waggonseller*, 19 Pa. St. 248; *Luney v. Vantyne*, 40 Vt. 501.

II. There must have been such an understanding or expectation at the commencement of the services. 26 Cent. Law Jour. 51; *Gardner's Adm'r v. Schooley*, 25 N. J. Eq. 150; 15 Cent. Law Jour. 26, and cases cited.

III. The proof must be clear, direct, and explicit, so as to leave no doubt as to the understanding and intention of the parties. 26 Cent. Law Jour. 54, 184; 3 Wait's Act. and Def. 584, and cases cited; *Duffey v. Duffey*, 44 Pa. St. 398; *Sullivan v. Sullivan*, 6 Hun (N. Y.) 658. And loose declarations will not be regarded as evidence of such an agreement to rebut the legal presumption. 26 Cent. Law Jour. 54, 184; 3 Wait's Act. and Def. 584; *Hartman's Appeal*, 3 Grant's Cases (Penn.) 234; *Miller's Appeal*, 100 Pa. St. 568; 100 Pa. St. 330; 57 Pa. St. 457; 1 Atl. Rep. 167.

IV. If the services were rendered with a view to a legacy merely, respondent cannot resort to an action of implied *assumpsit*. *Guenther v. Birkicht's Adm'r*, 22 Mo. 446; *Osbourn v. Hospital*, 2 Strange, 728. Nor can he waive a contract, and sue upon a *quantum meruit*. *Chambers v. King*, 8 Mo. 517.

V. If plaintiff rendered the services on the strength of his father's promise to give him the forty acres of land, then he has either his action for the specific performance of the contract, or for the value of the land; and he must resort to one of them. *Hiatt v. Williams*, 72 Mo. 214; *Sutton v. Hayden*, 62 Mo. 101; *Gupton v. Gupton*, 47 Mo. 37.

ANDERSON & CARMACK, for the respondent.

I. The rule of law in England, and probably in

some of the states in this country, that in cases of this
kind, a plaintiff cannot recover unless he shows a
special or express contract entered into with his parent
for compensation or wages, is not the law in Missouri.
But our courts hold what is more in consonance with
justice, that in all such cases, it is a question for the
jury to determine, from all the circumstances, whether
the services were rendered under an implied contract for
compensation. *Hart v. Hart's Adm'r*, 41 Mo. 445;
*Smith v. Myers*, 19 Mo. 433; *Guild v. Guild, Adm'r*,
15 Pick. 129.

II.   Each case, of this class of cases, must neces-
sarily depend on its own special circumstances, as,
whether the services were rendered voluntarily or at the
request of the recipient, the circumstances in life of the
parties, the nature of the services rendered, and all the
facts affecting the case, and it is not necessary to prove
an express promise on the part of the parent to pay, or
produce proof of a specific contract for that purpose.
*Guenther v. Birkecht*, 22 Mo. 439.

III.   The question as to whether there was an
implied promise and a *quantum meruit* in this case, was
submitted to the court sitting as a jury under proper
and correct declarations of law, and the judgment of
that court should be affirmed unless there is no evidence
to sustain its findings. *Miller v. Brenicke*, 83 Mo. 163;
*Cunningham v. Snow*, 82 Mo. 587.

IV.   When the evidence is conflicting the appellate
court will not disturb the findings of the trial court on
the ground that they are against the weight of evidence.
*Roach v. Colbern*, 76 Mo. 652. But where there is any
evidence to support a verdict it will not be disturbed.
*Huckshorn v. Hartwig*, 81 Mo. 649; *Meyer v. McCabe*,
73 Mo. 237.

V.   The principles embodied in the declarations of
law given for the respondent have been approved by the
Supreme Court of this state in *Hart v. Hart's Adm'r*,
41 Mo. 445; *Smith v. Myers*, 19 Mo. 443.

VI.   The third declaration of law asked for by

appellant was properly refused by the trial court because there was no evidence even tending to establish it. *Cox v. Tipton*, 18 Mo. App. 450.

VII. This is an action at law on an implied *assumpsit*. It was tried as such in two trial courts below, and appellant, for the first time in this court, has made the remarkable discovery that it is an "equitable proceeding," and asks this court to review the evidence.

ELLISON, J.—Claims against estates of this sort are a very dangerous class of cases and should be scrutinized closely by the courts. Not that many of them are not meritorious, but from the nature of the claim and the situation of the parties, estates are liable to be swallowed up in a manner not contemplated by the law.

The ordinary presumption of an agreement or contract to pay for valuable services rendered, does not obtain where the parties occupy a family relation, and the closer this family relation is, the farther is the presumption removed. *Miller's Appeal*, 100 Pa. St. 568. It is held in England and in many of the states that there must be an express contract between such parties and that it must be proven directly and clearly. But in other states, among which is Missouri, that holding is modified to the extent of sustaining implied contracts, though the proof, as I conceive, must still be clear and satisfactory; and great care should be taken to distinguish between expressions of gratitude and intended generosity, and contracts importing a legal liability. "Loose declarations made to others, or even to the claimant himself, will not answer. That which may be only an expression of intention is inadequate for the purpose. It must have been the purpose of the decedent to assume a legal obligation, capable of being enforced against him. The ordinary expressions of gratitude for kindness to old age, weakness, and suffering, are not to be tortured into contract obligations." *Hartman's Appeal*, 3 Grant's Cases [Pa.] 271. There must be a

recognition of a contract by both parties. There must be an expectation, not only of the one to pay, but of the other to receive pay. This recognition and expectation, in other words, the contract, must exist at the time of rendering the service sued for. The *status* between the parties must be such as creates a legal obligation such as could be enforced at law. That claimant has passed his majority does not affect the matter.

The evidence relied upon to support the contract in this case consists almost wholly, if not entirely, of declarations made by the deceased after the termination of the service ; if such declarations evidenced a contract, the fact that they were made after the service would not render them incompetent. But the important question is, do they tend to show a contract between the parties ? In my opinion the most that can be made out of the testimony is, that deceased intended to discharge a moral obligation he felt towards his son by making him a gift of forty acres of land or a devise of it. He recognized his son's kindness, and intended as a mark of his appreciation of such filial duty to give him the land, whether by deed or will does not appear but from the statement of one witness, who said it was to be by will. The evidence clearly shows that deceased regarded the matter as within his own volition. There is no statement that he ever agreed to compensate claimant, or that claimant ever expected it. The presumption of law is against the idea of a contract and the evidence must be such as to overcome this and establish the contrary. If the intention was to make a gift merely, it rebuts the idea of discharging a legal liability. There is no evidence that the son was aware of his father's intention.

But if it should be conceded that there was an expectation of getting the forty acres by will, yet in the absence of a contract, express or implied, the claimant must fail. Services rendered by a member of a family merely with a view to, or in expectation of, the generosity of the party for whom the services were rendered will not support an implied *assumpsit*.

*Guenther v. Birkicht's Adm'r*, 22 Mo. 439; *Swires v. Parsons*, 5 Watts & Serg. 357; *Little v. Dawson, Ex'r,* 4 Dallas, 111.

Aside from the foregoing, these considerations suggest themselves from a study of the evidence in the cause. Plaintiff's charges cover a period of seven years and yet no account appears to have been kept of them and no payment appears to have been made as payments on account. There is a credit of one hundred dollars per year for amounts received from deceased, or retained out of proceeds of sales of produce of the farm; but the nature of this credit discloses that no account was kept of the items; it appears to be lumped or guessed off at so much per year. Besides, it is evident that deceased did not consider such credit was a payment on account, for the whole scope of plaintiff's evidence is, that deceased, as stated by witness Brown, had never given him anything but his "victuals and clothes." Again, the services charged for ceased some three years before the death of the father, and yet, though plaintiff was "very poor," no payment seems to have been made or settlement had or demanded. The deceased was a farmer whose farm appears to have been mortgaged; is it reasonable to suppose that he would permit a money demand of sixteen hundred and eighty dollars to accrue against him for the service of a servant? All this conduct is easily reconciled with the relation of father and son, but not of debtor and creditor. The only contractual relations which are shown to have existed between these parties is upon plaintiff's marriage, when, as it may be inferred, he felt the press of other obligations of equal potency with filial duty.

The judgment is reversed and the cause is remanded. All concur.