Burt .v. Gabbert.

---

GEORGE BURT AND ESSIE BURT, Respondents, v. ERMA GABBERT, Executor of the Estate of THOMAS L. GABBERT, deceased, Appellant.

Kansas City Court of Appeals, November 17, 1913.

1. **EXECUTORS AND ADMINISTRATORS: Estates: Claim for Services.** The plaintiffs instituted this suit to recover from the executor, compensation for services rendered to the deceased, during his life time. The deceased lived at the home of plaintiffs, one of whom was a daughter, during the latter period of his life with the understanding that he would compensate them therefor. *Held*, that a plaintiff must recover, if at all, upon a contract either express or implied and in the

absence of a showing of the existence of a mutual intention or understanding, that the services were not to be gratuitous, there can be no recovery.

2. ———: ———: ———: **Joinder of Parties.** Where a husband and wife rendered services to the parent of the latter, under an implied agreement that the services were not to be gratuitous, they might join in an action to enforce such a contract.

3. **INSTRUCTIONS: Undisputed Facts.** An instruction is erroneous which directs a verdict on a claim for pasturing and boarding a horse on the mere finding by the jury of the fact (not undisputed) that plaintiff did render such services.

4. ———. An instruction, which tells the jury to return a verdict for plaintiffs, on the finding that they intended to charge for the valuable services they were to render without requiring the jury to find further that deceased was aware of their intention and on his part intended to pay for such services, is erroneous.

Appeal from Platte Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED.

*James H. Hull* and *Ardey Gabbert* for appellant.

*Wilson & Wilson, Guy B. Park* and *A. D. Gresham* for respondents.

JOHNSON, J.—This suit originated in the probate court of Platte county on a demand filed by plaintiffs, who are husband and wife, against the estate of Thomas L. Gabbert, deceased, who was the father of Mrs. Burt. The demand is itemized and is based on personal services rendered by plaintiffs during the years 1908, 1909, and 1910, in boarding and caring for Gabbert and in pasturing and boarding his horse. Plaintiffs recovered judgment for $300 in the circuit court where the cause was tried on appeal and defendant appealed.

The principal contention of defendant is that the evidence fails completely to show that Gabbert en-

tered into any contractual obligation to pay for the services he received at the hands of plaintiffs but on the contrary does show that plaintiffs rendered the services gratuitously.

The evidence of plaintiffs discloses the following facts: In 1908, shortly after his wife died, Gabbert, who was old and in poor health, began living with plaintiffs. He was a man of substance and had been living with one of his sons on a neighboring farm but became dissatisfied and moved to the home of plaintiffs, taking with him some of his personal belongings, including an old horse. He was not given a room in the house of plaintiffs, but lived in a small house in their yard and took his meals with them. His room was comfortable and well furnished and was kept in order by his daughter. The old man was afflicted with asthma, expectorated profusely, and is described by some of plaintiffs' witnesses as being uncleanly in some of his habits. They state further that he had some affection of the kidneys and bowels which, at times, caused him to befoul his bed. Plaintiffs cleaned up after him and took good care of him, for which services they charged ten dollars per week in the demand under consideration. Though in poor health, Gabbert, almost to the day of his death, was able to travel and he spent a great part of his time away from home visiting his other children and on trips to Texas. Plaintiffs' claim for services rendered during a period of almost three years at ten dollars per week and including the pasturage and board of the horse at the rate of one dollar per month in the summer and five dollars per month in the winter, amounted in all to $462.64. There is evidence tending to show that the services were reasonably worth that sum.

The evidence of defendant is to the effect that the old man was able to take care of himself, was not afflicted with any uncleanly disease and required no

more care or attention than any other man of normal health and decent habits.

Plaintiffs introduced a number of witnesses whose testimony discloses an intention and understanding on the part of Gabbert that the services plaintiffs were rendering were to be adequately compensated. To one witness he talked about selling his farm and said, ''No, I won't sell it; I can't get as much for it as I want. I am going to stay with George and Essie (plaintiffs) and I expect to pay them for keeping me.'' . . . . ''I expect to pay George and Essie well for staying with them. I can't stay at home now.'' Another witness testified: ''He said he expected to pay them for boarding him and boarding the mare.'' To another he said: ''I am going to pay Mr. Burt and Mrs. Burt for keeping me, boarding me what time I am here. I haven't got any place to stay except there for a home.''

The sheriff of Platte county testified: ''I had a conversation with Mr. Gabbert the year he rented his farm to his son who was to come from Oklahoma here. It was that fall. He said he was living in the house at the time and Erma (his son) was coming to take possession of the farm. I don't remember what year it was. Between 1908 and '10. I went there to see some cattle. He was out in the yard when I rode up. He appeared to be angry. We went to the back part of the farm where the cattle were. He told me he had bought some cord wood; said he was fixing to go over to Burt's to get his dinner. He said the parties living in his house—Linsey was living in his house— wouldn't cook him nothing that he could eat, . . . and he was boarding over at Burt's; that we would go over there at Burt's and eat our dinner and he would pay for it; that he expected to pay for what they done for him there.''

The evidence from which we have quoted shows quite clearly that Gabbert had no thought of being the

recipient of gratuitous services from his daughter and son-in-law but recognized an obligation to compensate them. He looked upon himself as a boarder who must pay for what he received, not as an aged parent being honored by the voluntary offerings of filial love and reverence. And from evidence showing that such was his understanding of his relationship to plaintiffs, the inference may be drawn that they had the same understanding and that the services were rendered on an implied agreement that they were to receive pecuniary compensation. [Stone v. Troll, 134 Mo. App. 308; Hayden v. Parsons, 70 Mo. App. 493; Lillard v. Wilson, 178 Mo. 145.]

We think plaintiffs discharged their burden of showing affirmatively the existence of a contractual understanding between them and Gabbert, which is the test of the right to recover compensation in cases of this character (Woods v. Land, 30 Mo. App. 176; Crowley v. Dagley, decided by this court at this term) and that the learned trial judge did not err in refusing defendant's request for a peremptory instruction.

There is no merit in the point made by defendant of a misjoinder of parties plaintiff. We held in Brinton v. Thomas, 138 Mo. App. 64, that where a husband and wife rendered services to a parent of the latter under an implied agreement that the services were not to be gratuitous, they might join in an action to enforce such contract, and we perceive no reason for changing that rule or for refusing to apply it in the present case.

Two of the instructions given at the request of plaintiffs are as follows: "The court instructs the jury that if they find from the evidence in this case that the deceased pastured and boarded his horse with plaintiffs, then plaintiffs are entitled to such sum for boarding and pasturing said horse as you may believe from the evidence they are entitled to, not to exceed the sum of seventy-four dollars."

"The court instructs the jury that where services are rendered and received, a contract, or hiring, or obligation to pay will be presumed, but a presumption may arise from the relationship of the parties that the services rendered are acts of gratuitous kindness, and in this case it is a question for you, taking into consideration all the circumstances, including the nature and degree of this relationship of the parties, and their circumstances in life, to determine whether there was any implied contract for compensation or not.

"In this connection the court further instructs the jury that if you find from the evidence in this case that plaintiffs rendered valuable services to Thomas L. Gabbert, deceased, father of one of the plaintiffs, Essie Burt, and father-in-law of the other plaintiff, George Burt, in boarding him, caring and washing for him, and that said plaintiffs intended to charge said Thomas L. Gabbert, deceased, for the same, and that such services were necessary for the comfort and well being of said Gabbert, then your verdict will be for the plaintiffs in such sum as you may believe from the evidence in the case they are entitled to, not to exceed the sum of three hundred eighty-eight dollars and sixty-four cents ($388.64)."

The first of these instructions is erroneous because it directs a verdict on the claim for pasturing and boarding the horse on the mere finding by the jury of the fact (not disputed) that plaintiffs did render such services. There is evidence in the record from which the jury well might have found that this old man was received by plaintiffs as an honored guest and was suffered to bring with him the property he needed or thought he needed for his personal use without any thought or intention that he should be required to pay for any of the services or benefits he should receive at the hands of his child and son-in-law. On such hypothesis plaintiffs would not be entitled to

recover on the claim for pasturing and boarding the horse.

The last instruction above quoted omits from its hypothesis a most essential element of plaintiffs' right to a recovery. It tells the jury to return a verdict for them on the finding that they intended to charge for the valuable services they were to render, without requiring the jury to find further that Gabbert was aware of their intention and on his part intended to pay for such services. As we said in Woods v. Land, supra: "There must be a recognition of a contract by both parties. There must be an expectation, not only of the one to pay, but of the other to receive pay. This recognition and expectation, in other words, the contract, must exist at the time of rendering the service sued for. The status between the parties must be such as creates a legal obligation such as could be enforced at law."

Plaintiffs must recover, if at all, upon a contract either express or implied and in the absence of a showing of the existence of a mutual intention or understanding, that the services were not to be gratuitous, there can be no recovery.

Other points made by defendant are found to be without merit. The attack of plaintiffs on the abstract of the record as being insufficient to bring the bill of exceptions before us is not well grounded as will appear by reference to rule 26, of this court.

For the errors noted in plaintiffs' instructions numbered 5 and 6, the judgment is reversed and the cause remanded. All concur.