MARY E. ROSE, Appellant, v. DAVID MAYS, Public Administrator, Respondent.

Springfield Court of Appeals, November 2, 1909.

1. **CONTRACTS: Services Rendered by One Member of a Family to Another: Facts Held Not Sufficient to Establish Contract.** The deceased married, moved away and later returned, sick and in poverty, to her mother. Mother and daughter lived together as one family for fifteen years and until the death of the daughter. The mother did the housework, the daughter being away most of the time. They remained in poor circumstances until the daughter came into possession of some money, but the same family relation continued. The daughter several times expressed an intention to pay the mother for her services, but there was no evidence that the mother expected to be paid therefor. Held, the mother was not entitled to recover from the daughter's estate for services rendered the daughter during life.

2. ———: ———: **Presumption That Such Services Are Gratuitous: Burden of Proof.** In cases in which the family relation exists the presumption is that services rendered by one member of a family to another are gratuitous, and to entitle one to recover for services performed while the family relation existed, the burden is upon the plaintiff to prove an express contract for payment, or, that there was an intention upon the part of the servitor to charge and upon the part of the recipient of the services to pay for such services at the time they were rendered.

3. ———: ———: **Evidence: Contract May be Shown by Facts and Circumstances.** The intention to charge by one and to pay by the other need not be shown by direct or positive testimony, but may be shown by facts and circumstances from which such intention may be inferred.

4. ———: ———: ———: What Must be Shown. No general rule can be laid down as to what evidence is required, but each case will stand upon its own facts. In the absence of an express contract, there must be some evidence, not only that the recipient of the services intended to pay for them, but there must also be some evidence that the one rendering the services expected to be paid for them, and, that such intention on the part of both parties existed at the time the services were rendered. Where there is urgent necessity for the services, very slight circumstances may be sufficient to make out a *prima facie* case. The evidence must be weighed in the light of the relationship, conditions and surroundings of the parties, and that construction given it which comports with reason and justice.

5. ———: ———: ———: Demurrer to Testimony; When Not Sustained. A demurrer to testimony should not be sustained if there is substantial testimony adduced in support of plaintiff's claim. By this is meant that it should satisfy a reasonably fair-minded person of the truth of the claim, or that it should be at least strong enough that fair-minded persons might differ as to the truth or falsity of the claim.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

*O. T. Hamlin* and *J. T. White* for appellant.

(1) In this case the evidence was ample to submit to the jury the question whether the presumption of gratuity, which goes with the family relation, was overcome by proof of an agreement for compensation for the service rendered by plaintiff. Evidence to show that the recipient of the service intended to pay for the same and that the servitor expected pay, has always been held sufficient to establish such an agreement. Fry v. Fry, 119 Mo. App. 476; Stone v. Troll, Admr., 134 Mo. App. 308; Shannon v. Carter, 99 Mo. App. 134; McMorrow v. Dowell, Admr., 116 Mo. App. 289; Graham v. Rapp, 105 Mo. App. 590; Ramsey v. Hicks, 53 Mo. App. 190; Christenson v. McDermott, 123 Mo. App. 448; Weinberg v. St. Louis Cordage Co., 116 S. W. 461. (2) It is not necessary to prove the contract in such a case in

all its terms, as it is in the case of contracts generally. It is sufficient to make out a case if the evidence shows an understanding, however indefinite in its terms, that compensation was intended and expected. And the understanding need not be proved by direct testimony, it may be inferred from circumstances. It is sometimes called an implied contract. Allen v. Allen, 101 Mo. App. 676; Ramsey v. Hicks, 53 Mo. App. 190; Cole v. Fitzgerald, 134 Mo. App. 17; Fry v. Fry, 119 Mo. 476; Lillard v. Wilson, 178 Mo. 145; Ronseik v. Boverschmidt, Admr., 63 Mo. App. 421; Dobbs v. Carter, 60 Mo. App. 320; Finnell v. Gooch, 59 Mo. App. 209. (3)   In a case like this where the daughter had married and left home, and returned to her mother afterwards at her own request, the question of whether the family relation existed so as to raise the presumption of gratuitous service, is for the jury. Smith v. Myer, 19 Mo. 434; Fitzpatrick v. Dooley, 112 Mo. App. 171; Lillard v. Wilson, 178 Mo. 145; Truesdale v. Truesdale, 72 Mo. App. 155; Hart v. Hart, 41 Mo. 445.

*W. D. Hubbard* and *G. W. Goad* for respondent.

(1)   The plaintiff, Mary Rose, and the deceased, Lillie Collins, were mother and daughter and lived together under the same roof and formed one domestic circle, thus forming the closest family relations, and if the mother rendered any services to her daughter, the law presumes such services to have been gratuitously rendered.   Birch v. Birch, 112 Mo. App. 157; Grand Lodge v. McKinstry, 67 Mo. App. 82; Hoffman v. Grand Lodge, 73 Mo. App. 47; McMorrow v. Dowell, 116 Mo. App. 289; Fitzpatrick v. Dooley, 112 Mo. App. 165; Kostuba v. Miller, 137 Mo. App. 161; Shannon v. Carter, 99 Mo. App. 134; Miller's Appeal, 100 Pa. St. 568.   (2)   In order to overcome this presumption of law and recover compensation for such services, a contract providing for such compensation must be clearly shown.   Fitzpatrick v. Dooley, 112 Mo. App. 165;

Guenther v. Birkicht's Adm., 22 Mo. 439; Woods v. Lands, 30 Mo. App. 176; Wallace v. Dennys, Adm., 28 Ky. Law 478, 90 S. W. 1046. (3) Plaintiff, in order to prove a contract for compensation for any services rendered by her to deceased, must show both an intention on the part of Lillie Collins to pay and an intention on plaintiff's part to charge for such services at the time they were rendered. Guenther v. Birkichts, 22 Mo. 439; Morris v. Barns, 35 Mo. 412; Smith v. Myers, 19 Mo. 433; Whaley et al., Exr., v. Peak, 49 Mo. 80; Woods v. Lands, 30 Mo. App. 176; Buelterman v. Meyer, 132 Mo. 481. (4) Loose declarations to others, or even to the claimant herself, will not answer. Woods v. Lands, 30 Mo. App. 176; Louder v. Hart, 52 Mo. App. 377; Williams v. Hutchison, 5 Barb. S. C. 122; Reynolds v. Reynolds, 92 Ky. 556, 18 S. W. 517; Wayman v. Wayman, 15 Ky. Law, 374, 22 S. W. 557. (5) Expectation of receiving property by will is not sufficient. Surries v. Parsons, 5 Watts & Searg. 357; Osbourne v. Govnrs. of Gray's Hospital, 2 Strange 728; Louder v. Hart, 52 Mo. App. 377; Little v. Dawson, Exr., 4 Dallas 111; Price v. Price, 19 Ky. Law, 211, 39 S. W. 429.

COX, J.—This case arises upon the following account filed by plaintiff in the probate court of Greene county.

> "The estate of Lillie Collins, deceased
> to Mary E. Rose, Dr.

| | | |
|---|---|---:|
| "1893 | To amount of money furnished Lillie to come to Kansas from Kentucky......$ | 26.00 |
| "1900 | To value of organ given in exchange for piano purchased by Lillie........ | 60.00 |
| | To services, household work, cooking, washing, etc., rendered for a period of fourteen years from 1894 or 1895 to 1908 at $200 per year............ | 2,800.00 |
| | Total ....................................$ | 2,886.00" |

There was a trial by jury and a verdict for plaintiff for sixteen hundred ($1600) dollars. The administrator appealed. There was a trial by jury in the circuit court, where, at the close of the plaintiff's testimony, the court sustained a demurrer thereto, and judgment was entered for defendant.

Plaintiff has appealed from this judgment, assigning as error, the action of the court in directing a verdict for defendant. It is conceded that the first item— twenty-six ($26) dollars, is barred by limitation, and, that there is no evidence to sustain the second item of sixty ($60) dollars, and, that as to these items the judgment is proper. The only contention is as to the item of twenty-eight hundred ($2800) dollars for services. The evidence tending to show the relationship of the parties, their condition, surroundings and manner of living, during the time for which services are charged, developed this state of facts.

The plaintiff is the mother of the deceased. The deceased was married at the age of sixteen to Collins, and removed to Kentucky in 1892. A year or so later, deceased, Lillie Collins, wrote to her mother, who then lived at Winfield, Kansas, asking for money on which to return home. The mother sent twenty-six ($26) dollars, and Lillie returned to her mother, sick and in poverty. The mother, too, was very poor, having nothing except a little furniture. The mother and daughter continued from that day until the death of Lillie, in February, 1908, to live together as one family. The mother did most of the housework, the washing, cooking, etc. They remained in poor circumstances until the daughter Lillie came into possession of some money, the date of which does not appear, but presumably about 1899 or 1900, for, on February 13, 1900, she purchased a home in Springfield, Missouri, paying eight hundred ($800) dollars therefor. This home was comfortably furnished, they moved to it and lived there, except for one short interval, until the date of Lillie's

death. The care of the home and the burden of the work was performed by the mother. Lillie was away from home for a considerable portion of the time, but for what purpose does not appear. She dressed stylishly; the mother dressed comfortably, and the home was transformed from one of poverty to one of comfort.

There was some evidence as to the value of the work performed by the plaintiff. Lillie died in February, 1908, leaving an estate of a net value, including the home, of about fifteen hundred ($1500) dollars. The plaintiff offered a great deal of testimony, in which witnesses detailed statements made by deceased in her lifetime, relative to a desire upon her part to compensate her mother for the labor she performed in the home, and, it is upon these statements alone that the plaintiff relies for a reversal of the judgment. Without detailing them in full we incorporate enough to show their general nature as follows:

In the presence of Mrs. Dowd, sister of the plaintiff, soon after her return from Kentucky, she said, in substance, to the plaintiff, "Mamma, if you will stay with me, I will never leave you, or forsake you. You have been very good to me, and I will repay you for all you ever do for me, and I will provide a home for you as long as I live." To which the mother made no reply. At other times, she said to Mrs. Dowd, practically the same thing in the mother's absence. To Mrs. Petty, about six months before her death, she said, in substance, that she got the home in Springfield purposely for her mother a home—that her mother had stuck to her and cared for her, and she got this home for her because she had no one else to care for her— that her mother was the best woman in the world; just waited on her like she was a second babe—did all the housework, etc. Mrs. Buckmaster heard Lillie say to her mother, in effect, that the work was pretty hard on her, but she expected to pay her for it. No rely by

the mother. She also stated to Mrs. Buckmaster that she wanted to leave the place clear of all incumbrance to her mother at her death, because, her mother, you might say, was just a slave to her, and she thought her mother was entitled to the place—that if she died first she intended for her mother to have the property because she had done so much for her—that she thought she could not do too much for her mother. To Mrs. Smithson she stated she thought her mother was the right one to have her property, and she wanted her to have it when she was done with it. She thought her mother had earned it, because she took care of her when she was sick. To Robert Smith and others she stated practically the same things. Lillie died from the effects of chloroform given preparatory to a surgical operation, and, to Dr. Fulbright, the evening before the operation, she said, "Doctor, if this operation is a dangerous one, I want to know it, for, if it is, I want to make a will and give all I have to my mother." He assured her the operation was not dangerous and the will was not made.

The foregoing, we think, fairly states the substance of the testimony as preserved in this record. Was it sufficient to take the case to the jury?

The rules of law applicable to this case are well settled in this State, and are as follows: In cases in which the family relation exists, as it undoubtedly did in this case, the presumption is that services rendered by one member of the family to another are gratuitous, and to entitle one to recover for services performed while the family relation existed, the burden is upon the plaintiff to prove an express contract for payment, or, that there was an intention on the part of the servitor to charge, and, on the part of the recipient of the services to pay for such services at the time they were rendered. [McMorrow v. Dowell, 116 Mo. App. 289; Sloan v. Dale, 90 Mo. App. l. c. 90.]

The intention to charge by one, and to pay by the

other, need not be shown by direct or positive testimony, but may be shown by facts and circumstances from which such intention may be inferred. [Cowell v. Roberts, Ex., 79 Mo. 218; McMorrow v. Dowell, 116 Mo. App. 289; Frye v. Frye, 119 Mo. App. 476; Cole v. Fitzgerald, 132 Mo. App. 17, l. c. 25.]

A demurrer to the testimony should not be sustained if there is substantial testimony adduced in support of the plaintiff's claim. By this is meant that it should satisfy a reasonable, fair-minded person of the truth of the claim, or, that it should be, at least, strong enough that fair-minded persons might differ as to the truth or falsity of the claim. [Baird v. Citizens' Ry. Co., 146 Mo. 265, l. c. 281, 282; 2 Thompson on Trials, section 1663.]

Keeping these wholesome rules of the law in view and weighing the testimony in the light thereof, could fair-minded persons differ as to the issue involved in this case, or could but one result follow? Here is an account of twenty-eight hundred ($2800) dollars for fourteen years of service as a house-servant by a mother against a daughter. If the services were rendered in this capacity at all they began when both were very poor, and this condition continued for some time. Then the daughter becomes possessed of some means; a house is bought by her in Springfield, and the family home of poverty is changed to one of comfort. The daughter gives frequent expression of her affection for her mother, and her intention to pay her for what she does for her. Also to leave her property to her if she should die first. Had she done this, as she might very properly have done, this controversy would never have arisen. The expressions of the daughter above referred to began upon her return to her mother in 1893 or 1894, and were continued, without interruption, at intervals, to the time of her death. Sometimes in the presence of the mother—sometimes directly to her, and sometimes in her absence. The mother says nothing. When

these expressions of affection and a desire to repay her for her goodness are made directly to the mother, no answer is given by the mother, but she goes on toiling as was her wont for the comfort of her daughter and the good of the home. No account is kept of services rendered during all this time. When the daughter acquires some means not a word is said by either about the payment of any sum due for services, but the little home is purchased and the lives of both are made more comfortable, and the devotion and love of the mother and daughter continue unbroken to the end. They shared together the hardships of poverty, and enjoyed together the comforts of better financial circumstances. Shall we say that under this testimony the question as to whether they occupied the relation of master and servant, or were simply living in the joy of each other's love was a doubtful one and about which fair-minded men might differ? We think not. To our mind it would be a travesty upon justice and a slander against motherhood to say that under the circumstances developed in this case the daughter was master and the mother servant, and the motive for the continuance of loving deeds and tender care of the mother was a wage.

We have examined carefully the cases cited by appellant, with other cases, and, while the courts have been very liberal in allowing claims for services against the estates of deceased persons, yet the evidence in all such cases must be weighed in the light of the relationship, conditions and surroundings of the parties, and that construction given it which comports with reason and justice. Where there is urgent necessity for the services, very slight circumstances have been held to be sufficient to make out a *prima facie* case. It is apparent that no general rule can be laid down as to what evidence is required, but each case must stand upon its own facts, but in the absence of an express contract there must be some evidence not only that the recipient

of the services intended to pay for them, but there must also be some evidence that the one rendering the services expected to be paid for them, and, that such intention on the part of both parties existed at the time the services were performed. In this case there are some facts that militate against the position of the plaintiff that she at the time the services were rendered intended to charge, and the daughter intended to pay for the claimed services. This account is practically twice the value of the entire estate. For the first few years of the time for which compensation is claimed, Lillie was poor, and, as far as the evidence shows, had no prospect of ever being able to pay anything. Then, she, by some means, acquired some money. If both expected that the mother was to be paid for services rendered Lillie, why was not something paid then? Nowhere in the evidence does it appear that the mother changed her condition or suffered possible financial loss by reason of the claimed services. There is direct evidence that in one instance the daughter paid a doctor's bill for the mother, and, the only fair inference from all the testimony is that the daughter paid the bills incurred for the support of the family, and the mother did the work, and, nowhere in this record do we find any evidence from which, in our judgment, it could be fairly inferred that the mother intended to charge for these services at the time.

Our conclusion is that the real facts were that this mother and daughter lived all these years together exemplifying a mother's love and a daughter's devotion, and this was the tie that held them together, and not the expectation of payment for services rendered, and, that under this evidence no other conclusion could be fairly reached, and, that, therefore, the learned trial judge was right in directing a verdict for the defendant. The judgment is affirmed. All concur.