AMANDA CROWLEY, Respondent, v. LUTHER A. DAGLEY, Administrator of the Estate of EMELINE P. ASBURY, Deceased, Appellant.

**Kansas City Court of Appeals, October 6, 1913.**

1. **EXECUTORS AND ADMINISTRATORS: Claim for Personal Services.** The plaintiff sued the administrator of her deceased mother to recover compensation for personal services rendered during the latter part of her mother's life. The mother repeatedly stated that she wanted the plaintiff paid well for taking care of her and that she wanted her sister and aunt to have what was left. *Held*, that plaintiff failed to sustain her burden of proof and that the demurrer to the evidence should have been sustained.

2. ——: ——: **Presumption.** Where personal services are rendered to an aged and partially helpless person by an adult child, the ordinary presumption that such services are to be paid for, which would arise were they performed by a stranger, does not obtain and the opposite presumption must be indulged that although the child was not legally bound to serve the parent gratuitously, the impelling motive was filial love or the dictates of humanity, rather than the expectation of pecuniary reward.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED.

*R. T. Stephens* and *E. L. Riley* for appellant.

*Martin E. Lawson* for respondent.

JOHNSON, J.—This suit originated in the probate court of Clay county on a demand filed by plaintiff against the estate of her deceased mother. The only item before us for consideration is the following:

"To personal services rendered said Emiline P. Asbury from August 8, 1910, to February 29, 1912, boarding her, furnishing rooms, washing her clothes and bedding, waiting on deceased, who during all that time was sick and often helpless, changing her clothing, watching her by day and by night, especially during the last three months of said time when the mind of deceased was affected and she needed constant care and attention, 80 5-7 weeks at $15  .  .  .  $1210.70. . . . For said attention the deceased agreed to pay and especially proimsed to pay for the care, attention and so forth first above stated."

The issues were tried in the probate court and afterwards in the circuit court where the cause was taken by appeal. At the latter trial the jury returned a verdict for plaintiff in the sum of $1000, and after unsuccessfully moving for a new trial and in arrest of judgment, defendant, administrator, appealed.

The principal contention of counsel for defendant is that the verdict and judgment are unsupported by substantial evidence and that the court erred in not sustaining a demurrer to the evidence. On the other hand counsel for plaintiff argue that the evidence discloses the existence of an implied agreement of the decedent to pay for the services in controversy.

The facts of the case as shown by the evidence of plaintiff thus may be stated. Mrs. Asbury, the mother of plaintiff, was eighty-two years old at the time of her death which occurred in Excelsior Springs, February 29, 1912. Her husband had died two or three years before the commencement of the services in dispute and she had been living alone at their old home in Kearney. Plaintiff, a married woman, lived with her

Crowley v. Dagley.

family on a farm near Kearney. Sometime before
August 8, 1910, she went to live with her mother who
had fallen into ill health and could no longer live alone.
On the date just mentioned, plaintiff removed with her
family and mother to Excelsior Springs chiefly for
the benefit of the health of the mother. They lived in a
rented house for a time but two or three months be-
fore her mother's death plaintiff's husband bought a
residence for the family. During the time they occu-
pied a rented house Mrs. Asbury paid half of the rent
but paid nothing for her maintenance and the care and
attention bestowed upon her by plaintiff. She was af-
flicted with a disease of the heart which subjected her
to fainting attacks and on that account and because
of her increasing feebleness required constant care
and attention. Plaintiff, herself in poor health, faith-
fully discharged the duties of a nurse and affectionate
daughter during the period for which she seeks com-
pensation. The witnesses do not agree about the de-
gree of the aged women's incapacity to take care of
herself but the evidence as a whole clearly shows that
she was feeble, childish and afflicted with severe at-
tacks of some form of heart disease. That her con-
dition required, and she received at her daughter's
hands, the greatest care and attention are facts about
which there can be no reasonable dispute. One day
while moving about in the house she accidentally fell
to the floor and broke one of her legs, from the effects
of which she died the next day.

A great granddaughter of Mrs. Asbury who was
a member of plaintiff's family testified: "Q. Miss
Thelma, did your grandma ever say anything to you
about the care that Mrs. Crowley was giving her?
A. Yes, sir. Q. What did she say about it? A.
Well, she said that she wanted Aunt Amanda paid for
taking care of her, that she wanted Mandy and Aunt
Ida to have what she left. Q. Ida is her sister, Mrs.
Mullen? A. Yes, sir. Q. How many times did she

say anything of that sort to you? A. Oh, she said it several times. Q. What did she say about the kind of care Mrs. Crowley was giving? A. She thought Aunt Amanda was giving her good care. Q. When did she say these things to you? A. She talked to me of night when we would go to bed when she couldn't sleep, lie there and talk to me. Q. Was it at those times when she said those things about paying her well for it? A. Yes, sir."

The wife of Mrs. Asbury's physician, who was on intimate terms with the family, testified: "Q. What was her physical condition, Mrs. Clark? A. Well, she seemed feeble, I think weak. Q. Who was waiting on her and caring for her when you were there? A. Mrs. Crowley would always be looking after her when I would be there. Q. Did Mrs. Asbury say anything to you about the care that Mrs. Crowley was giving her? A. She said Mrs. Crowley was so good to her and she wanted her well paid for what she had done. Q. Did she say that to you more than once? A. Yes, yes, when she would be talking it would be mentioned. Q. What care and attention did you see Mrs. Crowley giving her at different times? A. I would see her give her a drink and see her comb her hair, seen her take hold of her when she would go to walk across the room."

This is all the evidence introduced by plaintiff bearing on the subject of the nature of the relation between her and her mother. Mrs. Asbury had about $2600 in money which, during the period under consideration, was held by a trustee for her benefit. The record does not disclose that she owned any other property at the time of her death. Defendant introduced evidence tending to show that plaintiff rendered the services in question gratuitously, but it is not necessary to go into that evidence since our consideration of the questions arising from the insistence of defendant that plaintiff failed to make out a case to go to

Crowley v. Dagley.

the jury must be confined to evidence most favorable to plaintiff.

Where personal services are rendered to an aged and partially helpless person by an adult child, the ordinary presumption that such services are to be paid for which would arise, were they performed by a stranfer, does not obtain and the opposite presumption must be indulged that although the child was not legally bound to serve the parent gratuitously, the impelling motive was filial love or the dictates of humanity, rather than the expectation of pecuniary reward. In this rule the law wisely recognizes the existence of a natural and common human impulse, but this presumption may be overcome by proof that the parties themselves expressly or impliedly agreed before or during the performance of the services that they were not to be gratuitously performed but were to be compensated. The law will give effect to the mutual intention of the parties whether or not it be expressed in a formal contract and where it is made to appear that the recipient of the services intended to pay and the servant expected to receive compensation for them, such intention will be enforced however informal its expression may have been. The decisions in this State, however, draw a vital distinction between mere expressions of gratitude by the recipient and of a voluntary purpose to reward his benefactor at some future time and an express or implied agreement imposing a contractual obligation upon him to pay for the services. The foundation of a legal demand must be an obligation of the latter character and mere expressions of gratitude or of the voluntary intention to reward alone will not constitute a contractual obligation. As is well said by ELLISON, J., in Brand v. Ray, 156 Mo. App. l. c. 630: ''The expression of an intention to bestow a bounty and the expectation to receive a bounty will not suffice; an expectation to be made a beneficiary in a will is not sufficient. There must be an under-

standing of a debtor and creditor relation, capable of enforcement in law. There must be brought into existence a legal obligation.'' [See, also, Brock v. Cox, 38 Mo. App. 40; Woods v. Land, 30 Mo. App. 176; Lawrence v. Bailey, 84 Mo. App. 107; Penter v. Roberts, 51 Mo. App. 222.]

The burden is on the plaintiff to show affirmatively the existence of a contractual understanding between her and her mother. Being disqualified as a witness in her own behalf plaintiff is not required to establish this fact by direct and positive evidence but in the absence of such evidence must produce proof of facts and circumstances which if accepted by the triers of fact would overthrow the presumption that the services were gratuitous and raise a reasonable inference that the parties intended they should be regarded as the subject of a contractual rather than of a family relationship.

As is said by the Supreme Court of Utah in Mathias v. Tingey, 38 L. R. A. (M. S.) 750, ''If from all the facts and circumstances surrounding the parties and under which the services were commenced and rendered, it can be reasonably inferred that the child expected to receive remuneration and the parent intended to pay, for the services, a promise to pay therefor may be implied.'' And further it is said in the same case that ''if an adult child is no longer a member of the parent's family, but is supporting himself through his own efforts, and the parent under such circumstances requests the child to return to the parent and perform certain services for him, then the general presumption that the services are rendered gratuitously or as a matter of filial duty loses its full force and effect.''

But where the facts- and circumstances, adduced by plaintiff are found on analysis to be just as consistent with the initial presumption of gratuitous service as with the opposite inference, there can be no

issue to send to the jury, since the burden resting on plaintiff compels her to overthrow this presumption by proof before she can be entitled to recover.

The peculiar facts of the present case do not warrant us in holding that the sacrifices made by plaintiff for her mother's sake even tend to show that she was actuated by any other motive than that of filial love and reverence for her aged parent who was helplessly tottering on the verge of the grave. True her mother was able to pay for the services but she was in a condition that enabled her, if she chose, to satisfy the promptings of affection and it would overtax credulity to believe that this well-to-do farmer and his wife left the farm they owned, broke up their home and incurred the expense and inconvenience thereby entailed, from any motive of enabling the wife to earn the wages of a nonprofessional nurse. We are persuaded that the evidence of the sacrifices made by plaintiff for her mother is as consistent with the inference of gratuitous service as with the opposite inference and, therefore, of itself, is insufficient to raise a jury question.

We think plaintiff's case is not greatly aided by the testimony of the great granddaughter and the physician's wife. The declaration of Mrs. Asbury that "she wanted Aunt Amanda paid for taking care of her, that she wanted Mandy and Ida (another daughter) to have what she left," amounts to nothing more than an expression of gratitude, coupled with a voluntary purpose, never carried into execution to make a testamentary disposition of her property in favor of those two children. It must be borne in mind that the burden of plaintiff requires her to show the existence of a mutual intention that the services were to be paid for and we fail to perceive any good ground on which it may be said that a declaration of the recipient of the services of her intention to bestow a bounty in her will on her benefactor can support an inference

of the existence of a debtor and creditor relation between the parties. In our opinion it tends rather to contradict than to support such conclusion.

Counsel for plaintiff have not referred us to any case that goes the length we would have to go should we affirm the judgment. In the Utah case from which we have quoted the recipient of the services declared to witnesses her present intention to pay, in language which implied a present legal obligation. In Markey v. Brewster, 70 N. Y. 607, 10 Hun, 16, the deceased was shown to have declared repeatedly that she intended to pay the plaintiff and the court found that "there is nothing in the evidence tending to show that such compensation was to be made by will." In Lillard v. Wilson, 178 Mo. 145, the recipient expressed a present intention to pay and requested his physician to procure a notary to draw up the necessary papers.

In all of the cases in this State relied on by plaintiff (e. g., Cole v. Fitzgerald, 132 Mo. App. 17; McMorrow v. Dowell, 116 Mo. App. 289; Fry v. Fry, 119 Mo. App. 476; Cowell v. Roberts, 79 Mo. 218), there was proof indicating the existence of a present understanding between the parties that the services were to be compensated as distinguished from mere declaration of a voluntary purpose of the deceased to bestow a bounty upon his benefactor.

Our conclusion is that plaintiff failed to sustain her burden of proof and that the demurrer to the evidence should have been sustained. The judgment is reversed.

*Ellison, P. J.,* concurs; *Trimble, J.,* not sitting, having presided at the trial in the circuit court.