# FRED SMITH, Respondent, v. ESTATE OF JACK-SON DAVIS, Deceased, Appellant.

Springfield Court of Appeals, May 3, 1921.

1. **WILLS: Declarations Held Insufficient to Establish Contract to Pay for Services by Will.** Declarations of deceased, indicating an intention to bestow a bounty on an orphan boy brought up by him, or to make him the recipient of some property at deceased's death, made many years the boy had become of age and left deceased's home, was insufficient to establish an enforceable contract to give him property in payment for services.

2. **EXECUTORS AND ADMINISTRATORS: Evidence Held Insufficient to Show Plaintiff Had Not Been Paid for Services in Full.** Where claimant's own evidence showed a right to charge for services rendered decedent by whom he was raised for only three or four years, and it appeared that such services were worth from $12.50 to $15 a month where board and lodging was furnished, and that when he married and left decedent's home he had from $70 to $75, and received personal property from decedent worth $800 and $1000, a finding that he had not been paid in full was not justified by the evidence.

3. ————: **Acceptance of Services Raises Implied Promise to Pay, But Not When Family Relationship Raises Different Presumption.** Where one accepts valuable service from another, the law implies a promise to pay therefor; but the presumption which justifies an implied contract does not exist where the service is performed by one from whom the family relation existing between the parties raises a presumption that the services were gratuitous.

4. ————: **Contract to Pay for Services of Member of Family Must be Shown by Clear Testimony and Cannot be Implied.** Before one who is a member of a family of another standing in the relation of parent to him can recover for services rendered such parent, there must be clear and convincing testimony of an express contract, and, while such contract may be inferred from evidence, it cannot be implied.

5. ————: **Expectation of Making Payment Does Not Support Recovery, Where Party Rendering Services Did Not Rely Thereon.** Conceding that a decedent's statements showed an expectation

to pay an orphan boy living with him for his services, where there was no evidence of any contemplated breaking of the relation previously established, or of any change in the relation, it must be presumed that the services subsequently rendered were performed for the same reason as those previously performed, and there can be no recovery for want of any showing that the boy did anything relying on such intention.

Appeal from Lawrence Circuit Court.—*Hon. Charles L. Henson*, Judge.

REVERSED.

*Hays & Hartley, Allen & Allen* and *Mann & Mann,* for appellant.

(1) The appellant's peremptory instruction should have been given. Respondent made no case by his evidence and is not entitled to recover. (a) Because respondent did the last work for deceased prior to his marriage in 1903 when his cause of action then accrued. His suit was filed in 1918 and was, barred by the Statute of Limitations, R. S. 1909, section 1889. Boyd v. Buchanan, 176 Mo. App. 56; McGrath v. O'Hare, 175 Mo. App. 9; Taylor v. Tieman, 111 N. W. 229; Martin v. Martin Estate, 84 N. W. 439; Loper v. Estate of Sheldon, 97 N. W. 524. And the Statute of Limitations did not have to be pleaded in a case originating as this did in the probate court. Wencker v. Thompson, Admr., 96 Mo. App. 59-66; Henshaw v. Warren, 167 Mo. App. 372-373; Sandusky v. Courtney, 168 Mo. App. 327. (b) Because respondent was taken into the family of deceased as an orphan of tender years, unable to support himself, and raised until he was twenty-one years of age, fed, clothed and schooled and treated as a member of the family. Under such circumstances no implied contract to pay for his services can be raised. They are gratuitous, Ryan v. Lynch. 9 Mo. App. 18; Guenther v. Birkicht, Admr., 22 Mo. 439; Wood v. Land, 30 Mo. App. 176; Morris v. Barnes, 35 Mo. 412; Sloan v. Dale,

90 Mo. App. 87, and Cases cited under other points and authorities. (c) Because the evidence utterly fails to show such a contract as the law requires should be entered into in order to support this action after the death of the deceased. In fact it fails to show any contract at all. There must be an understanding between the debtor or creditor capable of enforcement at law. No such understanding is shown in this case. On the contrary the evidence rebuts it. Taylor v. George, 176 Mo. App. 215-219; Crowley v. Dagley, 174 Mo. App. 565-566, and cases cited. (b) Because the evidence totally fails to show that whatever work the respondent did in the family of the deceased while he was a member thereof, or any of his acts, point to a contract between himself and the deceased which cannot in the ordinary course of human conduct be accounted for in any other manner than as having been done in pursuance of an understanding that his services should be paid for and which would not have been done without such an understanding. Rosenwald v. Middlebrook, 188 Mo. 93. (e) Because no contract under the circumstances to pay the respondent for his services while a member of the family of deceased can be implied, because the evidence fails to show that there was a contractual intention and understanding, an expectation to pay wages by the deceased and an expectation to receive wages by the respondent. Brand v. Ray, 156 Mo. App. 630; Bircher v. Boemler, 204 Mo. 555, 562, 563; Kostuba v. Miller, 137 Mo. 161-175; Earhart v. Dietrich, 118 Mo. 418; Wood v. Land, 30 Mo. App. 176. (f) The evidence consists of the conversation of the deceased occurring in most part long after the respondent had left his home and been set up by deceased in business for himself, and only shows at most an expression of an intention to bestow bounty and such expressions (particularly in the total absence of a scintilla of evidence tending to show that respondent ever expected to receive a bounty), falls far short of giving respondent a cause of action.

Clow v. Wormington, 206 S. W. 415, 416; and cases cited (Springfield Court of Appeals). (g) Because the evidence only at most shows an expression of an intention on the part of the deceased to in some manner remember respondent in his will, and the expression of an intention to bestow a bounty and an expectation to receive a bounty (not shown here) will not suffice, and an expectation to be made the beneficiary in a will is not sufficient. "There must be an understanding between the debtor and creditor capable of enforcement at law." Taylor v. George, 176 Mo. App. 215-219; Clow v. Wormington, 206 S. W. 415; Brand v. Ray, 156 Mo. App. 622; Crowley v. Dagley, 147 Mo. App. 561; Bircher v. Boemler, 204 Mo. 554-563, and cases cited. (h) Because respondent upon reaching his legal majority married and his services to the deceased stopped, in fact, proof shows that he worked for himself the year before he married. No contract capable of enforcement at law could have been made prior to that time because respondent was a minor incapable of contracting. As far as the evidence shows he pursued the even tenor of his way as a member of the family until he married an moved under a roof of his own. Any promise made under the circumstances, as shown by the evidence, on the part of the deceased, was bound to have been a mere voluntary matter on his part and not binding or sufficient to constitute a contract enforced by law. Asbury v. Hicklin, 181 Mo. 676. (2) The court erred in excluding the testimony of G. H. Davis, Ben Pearce and Martha Davis, the son, son-in-law and widow, respectively, of the deceased. and in overruling the appellant's offer to prove facts in direct contradiction of the testimony offered by respondent by said witnesses. These witnesses were not disqualified because of their interests in the estate or the subject matter of the litigation. R. S. 1909, section 6354; Norvell v. Cooper, 155 Mo. App. 445; Cole v. Waters, 164 Mo. App. 567.; Gray v. Doubikin, 188 Mo. App. 667-672;

206 M. A.—29

McKee v. Downing, 224 Mo. 115. (3) The court erred in giving plaintiff's instruction No. 1. This instruction tells the jury that if they find from the evidence that plaintiff and defendant Jackson Davis entered into the contract alleged and that plaintiff fully performed the contract on his part, etc., that the plaintiff can recover. It is reversible error to give an instruction referring the jury to the petition for the facts to be found. Instructions should be predicated on the facts in evidence and should refer the jury to the evidence and not to the pleadings. Small v. I. & F. Co., 179 Mo. App. 465; Bank v. Dowler, 163 Mo. App. 68; Sinnamon v. Moore, 161 Mo. App. 168; Webb v. Carter, 121 Mo. App. 147; Jaffi v. Railroad, 205 Mo. 450. (4) Again this plaintiff's instruction No. 1 is erroneous because it tells the jury that if it finds there was a contract as alleged, then under the pleadings and the evidence your verdict must be for the plaintiff, and you will assess his damages at such sum as you may believe from the evidence may be the reasonable value of the services rendered by plaintiff to decedent Jackson Davis, without confining plaintiff's right to compensation, for services rendered from and after the date of the alleged contract. This instruction as drawn allowed the plaintiff to recover the reasonable value of his services from the time he was eight years old to the end of an indefinite period which is clearly erroneous. This was plaintiff's main instruction covering his entire case and the omission is not cured by any instruction asked by the defendant. Wojtylak v. Coal Co., 188 Mo. 260; State ex rel. v. Ellison, 272 Mo. 571; State v. Herrell, 97 Mo. 105; Hall v. Coal & Coke Co., 260 Mo. 367; Traylor v. White, 185 Mo. App. 331.

*T. S. Heffernan* and *Moore, Barrett & Moore,* for respondent.

(1) Where a contract calls for the performance of services and the extent and value thereof appear

speculative and difficult to admeasure, such as caring for old people during life, etc., and the consideration is equally indefinite and speculative, a specific remedy would be in equity for the specific performance of the same, however, on such a contract an action at law lies against the estate, on *quantum meruit* and the measure of damages is the value of the services rendered. Hall v. Gitman, 121 Mo. App. 630; Koch v. Hebel, 32 Mo. App. 103; Walker v. Gray's Estate, 73 Mo. App. 89. (2) Where one performs services for another, under an agreement or understanding, and on request, without any agreement or understanding as to wages or remuneration, the law implies a promise on the part of the party requesting and accepting the services to pay a reasonable compensation, unless there is a family relation, and the party performing the services can recover for the same on *quantum meruit*. Christianson v. McDermott Est., 123 Mo. App. 448; Fry v. Fry, 119 Mo. App. 476; Lillard v. Wilson, 178 Mo. 153; Sprague v. Sea, 152 Mo. 327. (3) An expressed intention to give is little short of a promise to give, and when acted upon by the donee, to his advantage, with the knowledge of the donor, the effect of a promise should be given it. Hubbard v. Hubbard, 140 Mo. 308; Dozier v. Mastin, 94 Mo. 328; McQuitly v. Wilhite, 247 Mo. 163. (4) A promise to will property will be enforced, and the donee, if suit for specific performance is not brought, may sue on the *quantum meruit*. 121 Mo. App. cited above; Berg v. Morreau, 199 Mo. 416; Clark v. Cordry, 69 Mo. App. 6. (5) And it matters not in what form the remuneration is expected just so it is expected, such as by will, devise, etc., and it is of no effect if received in a way not expected just so there is an expectation of remuneration in some form and the expectation can be shown by circumstances. Christianson v. McDermott Estate, and Fry v. Fry, above cited. (6) The above cases further holding that proof made of declarations of decedent in the presence of the donee, or proof that he de-

clared that he had informed the donee that he would be paid for his services was sufficient to submit to the jury the question whether the services were rendered gratuitously because of the family relation or on an understanding that the donee should be compensated. Kingston v. Roberts, 175 Mo. App. 69; Cole v. Fitzgerald, 132 Mo. App. 17; 111 S. W. 628; and authorities cited. (7) Respondent submits that from all the facts and circumstances detailed in evidence, his cause of action did not accrue until the death of Jackson Davis, and until the cause of action accrues, the Statute of Limitations is not set in motion, nor does same begin to run. Stark Bros. v. Gooding, 175 Mo. App. 353; Pitman v. Ball, 140 Mo. App. 389; Boyd v. Buchanan, 176 Mo. App. 56; Construction Co. v. Cole Co., 205 Mo. 49.

FARRINGTON, J.—This controversy arises over a claim made by the respondent against the estate of Jackson Davis, deceased, which claim was first filed in the probate court where he recovered a judgment for $1800, and on appeal to the circuit court he recovered a judgment for $2200, and it is the latter judgment which forms the subject of this appeal.

Appellant assigns numerous errors in the trial of the cause but principally contends that under all the evidence, when viewed in its most favorable light to the respondent, it fails under the law to support any judgment whatever, and as we have reached the conclusion that that contention is correct we will confine this opinion to the discussion of the law governing such cases under the proven facts.

Jackson Davis was a successful farmer, living near Republic, Missouri. He lived to a ripe age, leaving a considerable estate. Surviving him were two children to whom he left his property by a will. Many years prior to his death, on May 20, 1890, a carload of orphan children were sent from New York to Republic for the purpose of placing these waifs in responsible homes.

The claimant here at that time was eight years of age, and it fell his lot to be taken into the home of Jackson Davis. The evidence clearly shows that from that time until he was 21 years old he lived under the roof and at the home, and worked on the farm of his benefactor. When he became 21 years of age he married, moved away to a place of his own and has reared his own family. He left the decedent's household in 1903 and Jackson Davis died in December, 1917.

Respondent recites in his claim that during all of the time he was in deceased's home he faithfully demeaned himself as a servant and employee, and that his services were reasonably worth the sum of $3,000; stating further that on various occasions during his lifetime Jackson Davis promised and agreed that if claimant would remain with him and serve deceased faithfully until claimant reached the age of 21 years, that he, deceased, at his death would leave him a forty-acre tract of land and that he would remember claimant in his will and otherwise make provision for him at his, decedent's death. It is alleged, that claimant has never been paid anything for his services rendered, and that they were rendered in contemplation on the agreement. Judgment was asked for $3,000 to compensate him for the reasonable value of such services. There is no claim that claimant was ever adopted, and under the facts of the case when this claimant went into the home of the deceased, being a child of eight years of age, the relation of *loco parentis* was created.

This is a suit for the reasonable value of services rendered and performed by the claimant to the deceased, claimed to be based upon a contract wherein it is charged that the deceased promised the respondent that he would pay him for his work and services, and that relying upon such promises the respondent performed the services, expecting to be remunerated therefor. The record before us, at best, is very hazy concerning the time respondent claims such a contract was made. Respondent's

attorney in the opening statement to the jury, which is set out, recites that when he had reached the age of 18 years, Davis said to him; "Now, Fred, you are a good worker and you are about to reach the age of 18 years (italics ours); if you will stay with me and work faithfully until you are 21 years of age, I will give you at my death forty acres of land, and I will see that you are cared for and I will take care of you." In respondent's statement of his case here, it is said that respondent's theory is that when he reached the age of 14 *years* (italics ours) it was agreed between himself and Jackson Davis that if he would remain with Davis until he reached the age of 21 years, he being a good worker and to whom Davis showed more than an ordinary attachment, that he would be cared for at the death of Davis, but specifically so by being devised forty acres of land.

In summing up the evidence claimed to support a contract, respondent's attorney, in his argument, recites that in view of the foregoing declarations of the deceased, we have his statements showing that a contract to meet all of the requirements was entered into between Fred Smith and Jackson Davis, and that such contract was in existence four years before Smith left the home of Jackson Davis. We may state, without going into detail, that respondent introduced some testimony of witnesses concerning conversations which they had with the deceased many years after the claimant had become of age and left the home of Jackson Davis. All of such declarations, at most, go no farther than to indicate an intention to bestow a bounty upon the claimant or make him the recipient of some property at his death. This testimony fails to meet the requirements necessary to establish an enforceable contract. [See Woods v. Land, 30 Mo. App. 176; Guenther v. Birkicht's Admr., 22 Mo. 439; Brandy v. Ray, 156 Mo. App. l. c. 630, 137 S. W. 623; Bircher v. Boemler, 204 Mo. 554, 103 S. W. 40; Taylor v. George, 176 Mo. App. 215, 161 S. W. 1187; Crowley v. Dagley, 174 Mo. App. 561, 161 S. W. 366; Clow v. Worm-

ington, 206 S. W. 415; Rose v. Mays, 139 Mo. App. 246, 122 S. W. 769.]

The testimony, which we will set out more in detail, relating to conversations had with the deceased when the claimant was a member of his household took place somewhere from seventeen to nineteen years prior to the taking of the testimony in this case, and it may be as well to revert to that testimony at this juncture, for if claimant has made a case at all it must depend upon the legal effect of these alleged conversations.

Witness S. A. Wise recites a conversation which he had with the deceased at his home in which the deceased said: "I think Fred will make a selection of a woman as well as you did and I won't begrudge making him an heir to my estate. I promised Fred that if he would stay with me until he was 21 that I would make him an heir to part of my estate." The witness further testified that Fred was not there at the time, but in answer to a question, which was, Q. "Did he tell Fred that he would do that?" his answer was, "Yes sir." He further said that he did not know what Fred's age was at the time but that it was before Fred was married, and this witness had been married more than seventeen years. The witness further states that the conversation had never been called to his attention but once since 1902, and that was when Fred Smith came to him talking about the case.

W. W. Gilmore testified that in about 1900, when he was threshing wheat on his farm, Fred, the claimant, helped him and when he went to settle up he asked Mr. Davis, the deceased, whom he should pay, and that he said Fred needed some clothes and to pay him, that is, the deceased; that Fred was not a work hand, that he was just a boy he had raised and expected to settle with him when he was 21 years of age for whatever work he, Gilmore, paid to the deceased. He stated that the deceased said that he had an agreement with Fred to

give him board and what he ate, and that he told him he was going to give Fred a part of his estate.

Mrs. Mary Wise testified to a conversation had with the deceased in the presence of her husband, which has been hereinbefore mentioned, and she said that the deceased told them that if Fred stayed with him until he was 21 years old, and obeyed him, he intended that he should have his estate just the same as the other two children. She said that the deceased said that he intended that, but she did not say that he had told Fred anything about it and that he was not present at that conversation.

O. R. Thurman testified that something like 18 or 19 years ago he had a conversation with the deceased in which he said that he had not adopted Fred but that he was going to, and that if he did not, he was going to fix him up just the same as the rest of the children. He further testified to another conversation had after respondent had left the home, in which the deceased said: "That boy shall heir as much as any child I have got." This conversation was had many years after the claimant had left the deceased's home. The witness also testified that in the conversations the deceased never said that he had told Fred anything, and that from the conversations he had had with the deceased it was apparent that claimant was treated as a member of the deceased's family.

Fyan Young testified that the deceased told him that he had told the respondent if he stayed with him he would see that he was cared for or taken care of, or something to that amount; he said he would treat him as one of the family, but any way, he said he was going to care for the boy or see that he had something, or was paid for his trouble. That when this conversation took place the respondent was about grown. That the deceased said he had told Fred if he stayed with him he would look after him and treat him as one of his own family and remember him.

J. C. Hale's testimony was that the deceased told him that the claimant was the best boy he had ever seen to work, and that he had told him to go on and work and he would divide what he had with him; that he said, "I intend, if I have anything when I die, that he shall have a part of it," and that that conversation was before Fred was married, just a boy.

J. H. Wise testified that the deceased told him that after Fred had married he rented a farm, and that he had told him he was going to buy forty acres of ground, and that before he was married he would give him a team; that these conversations took place when he was 21 years old.

The testimony shows that the services which claimant performed were those of a boy on a farm, beginning when he was old enough to work and continued up to his majority, doing that which the ordinary boy, on a farm, going through that period of life, does. It is further shown that labor on farms during that period was worth from $12.50 to $15 a month, where board and lodging was furnished. It is further shown, without contradiction, that when Fred married he had from $70 to $75, which he had been permitted to keep from some land he had rented and raised a crop on, and that his benefactor had given him a span of mules, set of harness, a wagon, five or six head of sheep and a cow. The only work that he ever did for anybody else that is shown was helping Gilmore thresh wheat. The evidence, without contradiction, shows that he had sent him to school, clothed and fed him, and treated him as he did his own son who lived in the family, and as the son of a farmer boy in that station in life is ordinarily treated.

We think the evidence fails, in the first place, to show that the claimant was not paid the reasonable value of his services. As shown by the testimony set out, the longest time, according to claimant's own evidense, for which he would have any right to charge for

his reasonable services would be between three and four years; that the services he performed were ordinarily and reasonably worth from $12.50 to $15 a month, and that when he left the household of Jackson Davis the property which was given to him by Jackson Davis amounted in value to between $800 and $1,000. There is no evidence in this record to justify a finding that he had not been paid in full, if there was such a contract las the statement sets out. On the other hand, the claimant fails to show such testimony as would justify reaonable minds to find that a contract, enforceable as such, was ever entered into between these parties.

The law is well settled that where one accepts valuable services or property from another, the law implies a promise to pay for the same, but that that presumption which justifies an implied contract does not exist where that service is performed by one from whom the family relation existing between the parties would raise the presumption that the services rendered were gratuitous. [See Bircher v. Boemler, 204 Mo. 554, 103 S. W. 40; Taylor v. George, 176 Mo. App. 215, 161 S. W. 1187; Clow v. Wormington, 206 S. W. 415; Brand v. Ray, 156 Mo. App. 622, 137 S. W. 623; Crowley v. Dagley, 174 Mo. App. 561, 161 S. W. 366; Kostuba v. Miller, 137 Mo. 161, 38 S. W. 946; Erhart v. Dietrich, 118 Mo. 418, 24 S. W. 188; Wood v. Land, 30 Mo. App. 176; Ryan v. Lynch, 9 Mo. App. 18; Guenther, v. Birkicht's Admr., 22 Mo. 439; Morris v. Barnes, 35 Mo. 412; Sloan v. Dale, 90 Mo. App. 87.] These cases, and the cases cited by respondent, all declare the law to be that before one who is a member of a family from whom there is a parental duty owing can recover for services rendered to such parent, there must be clear and convincing testimony to the effect that the services were rendered in pursuance to a contract, and that contract must be an expressed contract established by evidence from which it can be inferred that a contract was made by the terms of which the parent was bound

to pay for the services, and the one rendering the same did so expecting to be remunerated therefor. If we read these cases correctly, there is never a recovery by a member of a family owing a duty on what is technically termed an implied contract in law, but as stated before, the recovery must be upon an express contract, or from evidence from which it can be reasonably concluded that there was a distinct understanding and agreement, understood an acted upon between the parties, a contract established on inference rather than implication.

In this case, as the writer views the testimony, there is insufficient evidence to show that the deceased ever did more than express an intention to give Fred something for the services which he performed in the shape of a devise, or bounty, or legacy, but admitting that from what he said it could be inferred that he expected to pay this respondent, there is no proof from which it can be inferred that Fred Smith did anything relying upon such intention of the deceased. No witness swears that these statements were ever made by the deceased in the presence of Fred Smith, or that he ever heard of them. The nearest the testimony comes to showing this is that two of the witnesses say that the deceased told them that he had told Smith this. That is not sufficient, because Smith's conduct remained exactly the same after these alleged statements were made as they were prior to their utterance. Here was a boy, taken into this family as a member of it, and treated as a member of it from infancy. He did those very things that the son of a man would and ought to do. The deceased stood in the relation of a parent to him, and this relation, as sworn to by all the witnesses, continued at least up until he was 17 or 18 years of age, just as a son's relation would be to his father. The record presented to us is absolutely barren of any change of relation that took place from that time until the claimant was 21 years of age. He went along in the same old way, doing the same things,

and without some proof to the contrary he must be presumed to have done it for the same reason that t¹ services were performed prior to these alleged conversations which are claimed to have fastened a liability upon the deceased. There is no evidence of any relation whatever existing between these two people other than that which was established when the claimant was eight years of age on entering the home of the deceased. There is no proof that he at any time contemplated breaking that relation which he established in his infancy and thus call for some additional compensation other than being cared for and reared in this home. It is said in the case of Guenther v. Birkicht, 22 Mo. l. c. 443, "It is clear from this case, that the plaintiff lived with the defendant as a member of his family, in all respects, and was treated by the latter as one of his own children; that, although the defendant was not bound to provide for him, or furnish him with any support, and was not entitled by law to claim the plaintiff's services, if he had not chosen to render them, yet that he did, in fact, support and maintain him in his family, and as a member of it, and stood *in loco parentis* to him. The books are full of cases to show that, under such circumstances, the law will not imply a promise to pay for services thus rendered, or permit a recovery, unless an express promise is shown, or something to prove that such was the expectation on both sides. In that case the court held: "The mere performing of work and labor, as a member of the family, after the plaintiff became of age, he having lived with his mother and stepfather for a long time before and after that event as one of the family, is not sufficient to raise the implied promise." [See Ryan v. Lynch, 9 Mo. App. 18; Morris v. Barnes, 35 Mo. 412.]

Respondent relies particularly on the following cases, which we will notice briefly: Christianson v. McDermott Estate, 123 Mo. App. 448, 100 S. W. 63, in which case the deceased lived in the claimant's home;

she was not related to him, and the testimony clearly shows that he said in her presence that she would be paid. It would be a far call to say that the law governing a case with these facts could be applied to the facts of the case at bar.

In Fry v. Fry, 119 Mo. App. 476, 94 S. W. 990, the claimant was the daughter-in-law of the deceased; he lived in her home. In the course of the opinion it was stated that there was evidence going to show that the plaintiff expected remuneration; that the deceased in the presence of the claimant said that she ought to be paid for her work and care, and that he would pay her, and the court there said: "Now the fact that deceased had resided with plaintiffs, and other facts, including the declarations of the deceased, inclined to prove that the parental relationship was not the reason, or the sole reason, at least, why plaintiffs cared for him; but that pecuniary reward was expected."

The record before us may be searched through and the only thing that can be urged which would show an expectation on the claimant's part to receive pay was the fact that he remained in the home and worked after the statements of the deceased had been made, but he had been doing that very thing all the time prior to the statements, and the proof that they were made, followed by nothing except the performance of those things which he had already been doing, without expectation of pay, fails to show any evidence of expectation from him by reason of the statements.

In Cole v. Fitzgerald, 132 Mo. App. 17, 111 S. W. 628, the claimant was a mature woman, left her home and came to the home of the deceased. He made statements which showed an intention to pay, and the opinion states that the entire evidence makes ignorance on her part of the statements and intentions of her father improbable. In fact, one witness testified that the claimant thought when she was doing the work that her father expected to pay her in some way.

In Kingston v. Roberts, 175 Mo. App. 69, 157 S. W. 1042, the deceased went to live in the claimant's home; that the deceased had stated that he was going to pay her, concerning which the court in the course of the opinion says: "This, together with the testimony to the effect that plaintiff was endeavoring to have deceased pay her, was sufficient to take this question to the jury."

In Lillard v. Wilson, 178 Mo. 145, 77 S. W. 74, the parties were not living as a part of the same family; the relation between them was one of business, which arrangement, the court said, excludes prima facie any idea that either expected the other to give him something for nothing, but that it was a matter of business between them.

In summarizing, we may say that in addition to all the facts and circumstances which enter into the decision of these cases, the courts must constantly keep in mind the cause which brought about the relation upon which liability is sought. Where the claimant gives up a home or other employment and comes to live with the parent or party from whom remuneration is asked, or where such party goes and lives in the home of the claimant, and it is shown that he is receiving, because of such changed relation, valuable services, there will be required much less evidence from which a remunerative. relation can be inferred than in those cases where the claimant himself is the recipient of a home and from which he derives much that is valuable in life. These things which he is receiving answer for the service which he perchance is performing, and to get more in return for his services than those things which he is in need of and getting, requires cogent and persuasive evidence of probative force.

As we view this case, if it be admitted that the evidence is sufficient upon which a finding could be made that the deceased expected to pay the claimant for his services, and if it be admitted that the claimant heard that the deceased had made such statements, and as to

this the only proof of same is that several witnesses testified that the deceased told them that he had told Fred what he was going to do, still the case must fail, because of the other important element necessary to be shown in order to recover where the relationship exists, as did in this case, because of the utter failure to show that the claimant in any way acted upon such an intention on the part of the deceased, or in any way indicated that he was expecting pay for what services he was performing.    The judgment is, therefore, reversed.

*Cox, P. J.,* and *Bradley, J.,* concur.