EMERSON BRAND, Respondent, v. O. P. RAY, Administrator, Appellant.

Kansas City Court of Appeals, May 15, 1911.

1. **CONTRACTS: Family Relation: Uncle and Nephew.** Where a bachelor and his two sisters and a son of one of the latter, live together on a farm, and the son performs service for his uncle when he was sick, by caring for and waiting upon him for a period from the time he was twelve years old, for near twenty-four years, when the uncle died, it was *held*, that in such family relation there was no presumption that payment was intended for such services; and that an express or implied contract should be shown establishing a debtor and creditor relation capable of being enforced in law.

2. ———: ———: **Bounty: Will: Expectation.** An expectation to bestow a gratuity on the party performing services to another member of the family or to provide for him in his will and an expectation to receive the gratuity or provision in a will, will not establish a contract between the parties, and no legal obligation results.

3. ———: ———: ———: **Evidence.** Where an uncle, living in family relation with his nephew for a period of near twenty-four years, stated at various times to the effect that he intended to will to the nephew what property he had left after he was through with it, if the nephew stayed with him, waited upon him and behaved himself, and it appeared the nephew expected provision would be made for him in his uncle's will, it was *held*, that such evidence did not prove a contract, express or implied, to pay for such services, and no recovery could be had.

Appeal from Chariton Circuit Court.—*Hon. John B. Butler*, Judge.

REVERSED.

*R. W. & W. W. Rucker* for appellant.

(1) There is no evidence tending to establish an express contract, and no proof of facts and circumstances from which an implied contract can reasonably be inferred. The casual declarations alleged to have been made by deceased are wholly insufficient to justify the inference of a contract. The legal presumption are against plaintiff. The defendant's demurrer should have been sustained. Birch v. Birch, 112 Mo. App. 163; Lawrence v. Bailey, 84 Mo. App. 109; Fitzpatrick v. Dooley, 112 Mo. App. 170; Castle v. Edwards, 63 Mo. App. 567; Louder v. Hart, 52 Mo. App. 380; Woods v. Land, 30 Mo. App. 176; Rosenwald v. Middlebrook, 188 Mo. 101; Steele v. Steele, 161 Mo. 575; Reed v. Morgan, 100 Mo. App. 723; Sloan v. Dale, 90 Mo. App. 90. (2) The court erred in overruling defendant's motion for a new trial. The undisputed testimony shows that plaintiff, his mother, his aunt and his uncle constituted one family and that they resided together as a family dur-

ing all the years covered by this suit. This being true the law presumes that whatever services the plaintiff rendered the deceased were mere acts of gratuitous kindness, prompted by affection and not performed in the expectation of receiving pay for same. It devolves on plaintiff to overcome this presumption either by proof of an express contract or by proving such facts and circumstances as will justify a reasonable inference of an implied contract. There is no such proof in this record. The motion for a new trial should have been sustained. Birch v. Birch, 112 Mo. App. 163; Lawrence v. Bailey, 84 Mo. App. 109; Fitzpatrick v. Dooley, 112 Mo. App. 170; Castle v. Edwards, 63 Mo. App. 567; Louder v. Hart, 52 Mo. App. 380; Woods v. Land, 30 Mo. App. 176; Rosenwald v. Middlebrook, 188 Mo. 101; Steele v. Steele, 161 Mo. 575-6; Reed v. Morgan, 100 Mo. App. 723; Sloan v. Dale, 90 Mo. App. 90. (3) The court erred in giving instruction No. 1 requested by plaintiff. Said instruction not only does not properly declare the law, but it expressly misstates the law as applicable to this case, and is in conflict with proper instructions given for defendant. Giving proper instruction for defendant did not cure the error. Birch v. Birch, 112 Mo. App. 163; Castle v. Edwards, 63 Mo. App. 569; Louder v. Hart, 52 Mo. App. 381; Bluedorn v. Railroad, 108 Mo. 450; McKinnon v. Coal & Mining Co., 120 Mo. App. 164; McNichols v. Nelson, 45 Mo. App. 454; Wallack v. St. Louis Transit Co., 123 Mo. App. 167. (4) The court erred in refusing to give instruction number 7 requested by defendant. Said instruction correctly declared the law of the case and should have been given. Louder v. Hart, 52 Mo. App. 381; Woods v. Land, 30 Mo. App. 181; Castle v. Edwards, 63 Mo. App. 568; Lawrence v. Bailey, 84 Mo. App. 110; Tyler v. Hall, 106 Mo. 323.

*O. F. Smith* and *J. A. Collet* for respondent.

(1) Defendant's instruction in the nature of a demurrer was properly refused even if it be conceded that plaintiff and deceased were members of the same family during all the time covered by plaintiff's account, yet there was ample evidence to establish an implied contract on the part of deceased to pay plaintiff for his services. The intention to charge by one and to pay by the other need not be proven by direct or positive testimony, but may be shown by facts and circumstances from which such intention may be inferred. Birch v. Birch, 112 Mo. App. 157; Sloan v. Dale, 90 Mo. App. 87; Fry v. Fry, 119. Mo. App. 476; Cole v. Fitzgerald, 132 Mo. App. 17; Eisiminger v. Stanton, 129 Mo. App. 409; Stone v. Troll, 134 Mo. App. 308; Taylor v. Hudson, 145 Mo. App. 377; McMorrow v. Dowell, 116 Mo. App. 289; Rose v. Mays, 139 Mo. App. 246; Koch v. Hebel, 32 Mo. App. 103; Bosard v. Powell, 79 Mo. App. 184; Ramsey v. Hicks, 53 Mo. App. 190. (2) A demurrer to the evidence admits every fact proved, or which may be inferred from the testimony to be true and should never be sustained unless the evidence, when thus considered, fails to prove plaintiff's case. Noeninger v. Vogt, 88 Mo. 589; Healey v. Simpson, 113 Mo. 340; Baird v. Citizen's Railway Co., 146 Mo. 281; Thompson on Trials (1 Ed.) sec. 1663. (3) Respondent's second contention that "the undisputed testimony shows that plaintiff, his mother, his aunt and his uncle constituted one family and that they resided together as a family during all the years covered by this suit" is not tenable. First, because under the most favorable aspect of the evidence to respondent, it is a question for the jury to determine whether there was such family relations existing between the parties as to raise the presumption that respondent's services were gratuitous. Smith v. Myer, 19 Mo. 433; Fitzpatrick v. Dooley, 12 Mo. App. 165. Sec-

156 App.—40

ond, the evidence conclusively shows that for a period of eight or ten years respondent lived separate and apart from the family to which deceased belonged and was in no sense a part of that household, under which circum- stances the law presumes an intention, on the one side to pay, and on the other to receive pay for the services rendered. Sprague v. Sea, 152 Mo. 327; Moore v. Ranick, 95 Mo. App. 207; Thomas v. Coal Co., 43 Mo. App. 653; Lowe v. Sinklear, 21 Mo. 308; Hay v. Walker, 65 Mo. 817. (4) Respondent's first instruction cor- rectly declared the law of the case and was properly given. Eisiminger v. Stanton, 129 Mo. App. 1. c. 410; Taylor v. Hudson, administrator, 145 Mo. App. 377. (5) While respondent insist instruction No. 1 was properly given by the trial court, yet said instruction is not be- fore this court for consideration. There having been no objection made before the trial court to the giving of said instruction. Sheets v. Ins. Co., 226 Mo. 613. (6) Appellant's seventh instruction was properly refused for three reasons. First, because it doesn't correctly state the law. Fry v. Fry, 119 Mo. App. 478. Second, because it was comment on the evidence. Third, because it was an invasion of the rights of the jury to weigh and de- termine the facts. Woodward v. Railroad, 133 S. W. 667. (7) Even though it may be said that deceased's in- tention as expressed was to leave his property to respond- ent at his death and not an intention to pay respondent for his services, yet, nevertheless respondent may re- cover the value of his services in this action against the administrator. Koch v. Hebel, 32 Mo. App. 103; Hall v. Getman, 121 Mo. App. 630. The verdict was not ex- cessive nor was it against the weight of the evidence nor the result of passion and prejudice. Two juries, one in the probate court and one in the circuit court found that deceased promised and agreed to compensate plain- tiff for his services and thus the services were worth the amount recovered. This conclusion has the approval of the trial court, under which circumstances this court

will not interfere with the verdict, unless clearly shown to be wrong. Majors v. Parkhurst, 124 Mo. App. 108; Woodward v. Cooney, 111 Mo. App. 152; Thurmond v. White Lime Ass'n, 125 Mo. App. 61; James v. Life Association, 148 Mo. 15.

ELLISON, J.—Plaintiff presented a claim to the probate court of Chariton county against defendant as administrator of the estate of Irvin Brand, which reads as follows:

"For services rendered by the said Emerson Brand to the said Irvin Brand, in taking care of, waiting on, and attention to the said Irvin Brand during his lifetime, for a period of twenty-three years, nine months and seventeen days, dating from the 24th day of February, 1886, to the date of his death, Nov. 5, 1909,—the sum of Nine Thousand Four Hundred and Ninety-nine Dollars and 71-100 ($9499.71)."

On trial in the probate court an allowance of $5000 was made against the estate. The case was appealed by the defendant to the circuit court where, on trial, a verdict and judgment were rendered against the estate for $7300, whereupon defendant appealed to this court.

Prior to his death Irvin Brand had resided on a farm in Chariton county for forty years. He was a bachelor and he and two sisters lived together as a family until one of the sisters (Mrs. Jordan) died some five or six years before her brother Irvin. The surviving sister (Mrs. Cannon) continued until his death, and she is the mother of this plaintiff, Emerson Brand, who was born on the place in about the year 1873. He was thirty-six years old at the time of his uncle's death, and, with the exception of five or six years that he spent in school in St. Louis, he lived on the place with his mother and uncle and aunt, all as one family. He married a few years before his uncle's death, but lived in a small house close to the main house, on the same farm, and continued the family relation. Deceased was about eighty-three years

old when he died, and he left an estate of about $11,000 in money.

The evidence in the case relates principally to the deceased's health and the service plaintiff rendered, as well as what is said on the subject of promises to pay for the service. Scarcely any of it is definite as to dates or length of time or character of service. It tended to show that up to about ten years before his death the old man was in ordinary good health. For some period before his death, say ten years, he was occasionally feeble, and at times in the last five years of his life was afflicted with kidney trouble, and at some times, in the last five years, his bowels were not within control. It further tended to show that his room was upstairs, but that he was down and about, except when sick, even up to shortly before his death. Plaintiff attended to the necessities of his room when he was not able to wait upon himself. As we have just stated, the evidence is quite general, and the argument drawn therefrom in plaintiff's favor is also of a general character. There is a disposition to allow rare disagreeable incidents in the near quarter of a century of service charged for, to characterize the whole of it. Taking the evidence, in its entirety, it leaves the impression that deceased was a care when he was sick, as other old people are, and no more. He was said to be "crabbed" and "cross" at times. Plaintiff's services, according to the dates of his account, begun back when he was twelve years old. It is not at all singular, nor ought it to be so classed, that an old bachelor would be cross with a young nephew who made his fire and brought up his meals when he was sick. Many of the witnesses were not daily observers of the family, or its affairs and management, some only once in several months. The only witness situated so as to know anything definite and of any considerable value, was plaintiff's mother, and her testimony, in its entirety, gives little support to an account of $9499.71. During all this period it appears two years too much of plaintiff's boyhood time is included in

the account, for according to his age and the dates in his charge, he began his service when twelve years old; yet it appears that he was fourteen when he returned from school at St. Louis. And it appears that, at least in his manhood, he was working the farm. That at times he ran a threshing machine and did threshing for the neighborhood, being gone for a week at a time. At other times he owned a saw and grist mill with which he sawed timber and ground grists, and while at this, he was also absent. When we bear in mind that during all this long period of his life, working the farm, including the operation of the machine and the mills, he was charging (for the country) high class nurse prices for services to his uncle, we see the wisdom of the law in requiring the courts to scan with care the bill rendered by a member of a family against the estate of his relative. Here is a bill, presented in a lump sum, the size of which about exhausts the estate of the supposed debtor. If rated by periods from the start, it amounts to more than $33 per month, much of this for a boy beginning at twelve years of age. If less than that rate at the start, then at a much greater rate when he became a man doing the work of the farm and running his threshing and his milling for the surrounding country. It is true the jury did not allow the whole charge, but he was not entitled to any praise for that. Yet they only reduced the rate to something more than $25 per month for the whole time, $7300 in all, and that, in our opinion, was near $5000 more than it should have been, if a legal claim had been shown. The face of the whole charge is most unreasonable. Plaintiff asks a jury to believe that he, as boy and man, but poorly provided with means, at times in debt, at one time being compelled to let a piece of land go back to the vendor, should have spent near twenty-four years in the service of another without any manifestation usual with a creditor, without an entry of a charge, and without a single credit; and all that time the supposed debtor fully able to pay and dying

with $11,000 in money on hand.

What we have thus far said as to the merits of the claim is proper to a full understanding of the reason of the law which we shall proceed to apply to the case. That the family relation existed is not a matter of doubt or dispute. In such instances there is no presumption, as in cases between strangers, that services rendered by one member to the other are to be paid for. Such services are, however, the subject of contract, and they can only be made the ground of an action when they are rendered under a contract between the parties. The contract need not necessarily be in the form of express terms. It may be implied; but before an implication will arise, it must be shown that there was a contractual intention and understanding and an expectation to pay wages by one party and an expectation to receive wages by the other. [Bircher v. Boemler, 204 Mo. 554, 562, 563; Kostuba v. Miller, 137 Mo. 161, 175; Erhart v. Deitrich, 118 Mo. 418; Morris v. Barnes, 35 Mo. 412; Guenther v. Birkicht, 22 Mo. 439.] And so the Courts of Appeals have time and again followed these decisions. [Woods v. Land, 30 Mo. App. 176; Brock v. Cox, 38 Mo. App. 40; Lawrence v. Bailey, 84 Mo. App. 107; Sloan v. Dale, 90 Mo. App. 87; Fitzpatrick v. Dooley, 112 Mo. App. 165; Birch v. Birch, ib. 157.]

The expression of an intention to bestow a bounty and an expectation to receive a bounty will not suffice; an expectation to be made the beneficiary in a will is not sufficient. There must be an understanding of a debtor and creditor relation, capable of enforcement in law. There must be brought into existence a legal obligation. In Osborn v. Governors of Guy's Hospital, 2 Strange, 728 (93 English Rep. reprint, 812), it is said: "The court must consider how it was understood by the parties at the time of doing the business, and the man who expects to be made, amends by a legacy, cannot afterwards resort to an action." In Andrus v. Foster, 17 Vert. 556, the uncle said to the niece taken in childhood, that if

she remained with him and did well until of age, "he would do well by her," and this was held not to establish a contract. In Williams v. Hutchison, 5 Barb. 122, the defendant said to his stepson, who had lived with him in the family until he was seventeen years old, and was about to leave, "that he did not wish him to leave, and was willing to pay for what he had done;" and it was held not to be a contract. These cases are quoted from with approval in Guenther v. Birkicht, 22 Mo. 439, 443, 446, 447.

In Bircher v. Boemler, 204 Mo. 554, 562, 563, it is held that proof that the deceased father promised his daughter to make provision for her in his will, on account of her taking care of him and providing for his wants, did not establish a contract to pay for her services.

In Woods v. Land, supra, where evidence showed an intention on the part of the deceased father to give the son forty acres of land or to will it to him, we said: "But if it should be conceded that there was an expectation of getting the forty acres by will, yet in the absence of a contract, express or implied, the claimant must fail. Services rendered by a member of a family merely with a view to, or in expectation of, the generosity of the party for whom the services were rendered will not support an implied *assumpsit*."

There are a great number of authorities to the same effect, and we will therefore look to the record to see the character of the evidence relied upon by plaintiff to establish a contract. We find that instead of showing a contractual relation, it clearly shows the contrary. The first witness introduced stated it this way: 

"Well, he said this, that as long as he lived he never calculated to give the boy anything, help him in no way, that he was having a hard time, and when he was dead and gone, he wanted the boy to have what he had left, if he took care of him."

Another witness said that: "He very often told me if he stayed with him during his life and taken care of him till he was dead, he intended to give him what he had left; he told me that a number of times, if he would stay there and behave himself."

Another said: "He has told me oftentimes that he wanted to raise Emerson, if Emerson would stay there with him he intended for him to have what he had when he died; he had plenty left to take care of him, what he left, he intended for the boy to have, he always called him 'the boy.' What he had was for Emerson, if he would stay there and do as he wanted him to do on the place."

Another stated that deceased said to him.: "You have more influence over this boy than any other neighbors, I believe, and I wish you would talk with him and I think it will be quite a help to him. I don't calculate to give him much, I want to keep him down, I don't want to learn him to spend money too fast, but when I am through with it, I calculate on giving him what I have,"——and that he told plaintiff. This witness stated on cross-examination that deceased wanted him to encourage plaintiff "to do chores around the place and what they would ask him to do, without grumbling" and that as a mark of affection and gratuity he would give him what he had after he got through with it.

Plaintiff's mother stated that she heard her brother say that he "intended his property to go to those who took care of him."

Another of plaintiff's witnesses testified that about four years before deceased's death, plaintiff being then about thirty-two years old, he sold plaintiff eighty acres of land; that he paid him $500 cash and his note for $3500, with deed of trust. That he could not keep the interest paid, and deeded the land back and took a title bond, so that if he paid in a certain time, he would get the land. In other matters the witness advanced him

money and was also his surety on a note, which he had to pay in part. That in all this embarrassment for money, plaintiff never suggested that deceased owed him, but said he expected to make the money out of the land, and at another time said he expected to "inherit it from his uncle." But afterwards witness went to deceased and asked him "if he wouldn't help Emerson (plaintiff) out on some other debts that I was responsible for, and he said he wouldn't do it while he lived."

The foregoing testimony not only fails to show a contract, or that either party supposed there was a contract, but, as already stated, affirmatively shows there was none. Every utterance by deceased discloses that he never had in mind any legal obligation, and every act of plaintiff shows that he never considered that deceased owed him anything. There was a total failure to prove a contract.

While we recognize the legal difference established between evidence necessary to enforce an oral agreement for a will, and evidence to prove an implied contract for services rendered a deceased, yet the courts sometimes give expression in either case to views which may well apply to the other. Thus in case of the former character, Judge VALLIANT made use of the following language: "Giving to every particle of plaintiff's evidence full credence, it goes no further than to show that William Steele took the plaintiff into his family, reared him as a son, received from him a son's duty and from time to time made statements indicating that he intended to leave him his property at his death. But that he had ever bound himself so as to impair his own right to will his estate as he might thereafter see fit, there is not a word of evidence." And this is quoted with approval in Rosenwald v. Middlebrook, 188 Mo. 58, 95.

Under the law and the facts as applicable thereto, we must reverse the judgment. All concur.