CHARLES BIGGERSTAFF, JR., Respondent, v. H. R. RILEY, Administrator of the Estate of CHARLES BIGGERSTAFF, deceased, Appellant.

**Kansas City Court of Appeals, November 1, 1915.**

1. **CONTRACTS: Evidence: Claim in Probate Court.** When an action is not founded upon a joint contract and the evidence, which tends to show that personal services were rendered under a contractual agreement for compensation, does not disclose a joint employment of plaintiff and his sister by the deceased but does show that their respective contracts and actions are entirely separate and independent, the parties different, the plaintiff's sister does not come within the terms of the section 6354, R. S. 1909, excluding one who is a party to a contract or cause of action "in issue and on trial."

2. **PROBATE COURTS: Pleadings: Presentation of Demands.** Formal pleadings are not required in the presentation of demands for allowance of a claim in the probate court and if the demand presented be sufficient to advise the opposite party of the nature of the claim and to bar another action on the same cause all other defects will be cured by the defendant if he suffers the case to go to trial on the merits without attacking the demand.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Frost & Frost* for respondent.

*W. S. Herndon* for appellant.

JOHNSON, J.—This action originated in the probate court of Clinton county upon the following demand, filed by plaintiff, against the Estate of Charles Biggerstaff, deceased:

"To working on the farm, looking after and caring for stock for and beginning March 6, 1905, for ten years ending March 6, 1914, at the rate of $25 per month or $300 per year.   $3,000

"To caring for and waiting on deceased and furnishing board and provisions for and from March 6, 1905, to and ending March 6, 1914, at the rate of $15 per month. .   $1,800"

The cause was tried in the probate court and on appeal in the circuit court, resulting each time in a verdict and judgment for plaintiff for the full amount of the demand.

The facts of the case, as disclosed by the evidence introduced at the trial in the circuit court, are as follows: Charles Biggerstaff, an aged negro, died intestate in Clinton county, March 6, 1914, leaving neither widow nor descendant, but leaving an estate consisting of a farm of seventy acres near Plattsburg, the county seat, and cash and solvent notes amounting to about $7000. He was born and reared in slavery in Kentucky and was married in that State to a negress called in the evidence "Aunt Jane" who, at the time of the marriage, had a son named John. The three were slaves of Wilson Biggerstaff who brought them with him on his removal, in 1857, from Kentucky to Clinton county. When they were freed from slavery, the three left the service of their former owner and made a home for themselves on a part of the farm which now belongs to the estate. John, who took the name of Biggerstaff, married and made another home, leaving his mother and stepfather. Two children were borne to him by his wife, viz., the plaintiff Charles and a daughter whom they named Ruth. The mother of these children died in their early infancy, and John returned with them to the home of his mother and stepfather, where they lived as one family until the death of John which occurred in 1893. Thereafter the two children continued to live with the decedent until Feb-

ruary, 1913, when Ruth married and left the old home. Plaintiff remained with the old man, who became a widower in 1898, until his death which, as stated, occurred in March, 1914. At that time plaintiff was twenty-eight and Ruth thirty years of age.

After the death of their father, the children were supported by their grandparents and, in their childhood, were sent to school. They were industrious and worked faithfully. Four years before her death their grandmother was stricken and rendered helpless by paralysis and the work of the children grew heavier. During the last ten years of his life the deceased was infirm and afflicted with a malady which required the almost constant attention of a nurse. Plaintiff discharged those duties and, in addition, performed all of the work on the farm, for which he received no compensation. In addition to doing such work, he worked for farmers in the neighborhood, using the money he earned for the support of the family. In short, during the period for which he now claims compensation he was farmhand and nurse for a helpless and diseased old man and most faithfully and efficiently performed his onerous duties.

There is evidence tending to show that plaintiff and deceased had a mutual understanding that the services were not being gratuitously rendered but were to be adequately compensated. Plaintiff's sister testified that on different occasions during the last ten years of his life, the old man, in her presence, declared his intention to plaintiff to pay him well for his services. "He said he was going to pay Bud (plaintiff) and pay him well for what he had done and my brother said 'all right.'"

Two daughters of Wilson Biggerstaff, who exhibited an unselfish interest in their father's old slave, especially after he became helpless, testified to having repeatedly urged him to pay or make some provision for paying plaintiff. One of them said: "I talked to

Old Charles about Bud's being so good, and he ought to be paid for it and Old Charles would tell me "At my death Bud and Ruth will get everything I have, there is no one else to leave it to, and I expect them to have it. He didn't pay them a thing while he lived. . . . He said that he was going to leave them every-thing he had, and at his death they would get it. He wasn't paying them now but they would get what he had at his death. He said they were good and kind to him and he wanted them to have everything he had at his death."

Another disinterested witness testified to having had a conversation with the old man in which the latter said "he intended to pay Bud for everything he done. He said Bud was good to him and was the only one that stayed by him when he was sick and waited on him and he intended to pay him and pay him well." An-other witness testified, "He always said he intended to will them his property at his death; he didn't pay them for their services on that account; they would get all he had anyway." A neighbor who had known deceased for twenty years said: "I have had frequent talks with the old man, and he said that Bud was doing the work, him and his sister, and he expected to pay them well for it."

We are asked to disregard the testimony of plain-tiff's sister and to reverse the judgment and remand the cause for the reason that she was incompetent to testify as a witness under section 6354, Revised Stat-utes 1909. In substance, the ground of her asserted incompetency is that she is prosecuting a demand for her services rendered to the deceased, is a party to the contract for services which plaintiff is seeking to have enforced and, therefore, comes under the ban of the provision of the statute that where one of the original parties to the contract or cause of action in issue and on trial is dead . . . the other party to such con-

tract or cause of action shall not be admitted to testify . . . in his own favor.''

The action of plaintiff is not founded on a joint contract and the evidence which tends to show that his services were rendered under a contractual agreement for compensation does not disclose a joint employment or hiring of plaintiff and his sister. All that the record shows is that the deceased promised to pay plaintiff for his services and that such promise which was accepted and acted upon in nowise was connected by the parties with the services of the witness, nor with any obligation the old man assumed towards her. The respective contracts and actions are entirely separate and independent, the parties are different, and the witness does not come within the terms of the statute excluding one who is a party to the contract or cause of action ''in issue and on trial.'' [Gunn v. Thurston, 130 Mo. 339; Carpenter v. Coats, 183 Mo. 52.]

The sufficiency of the demand filed in the probate court to support the verdict and judgment is challenged on the ground that ''the first item standing alone, might have been sufficient, but when the second was added in which a charge for caring for and waiting on deceased is intermingled with a charge for board and provisions furnished, the whole is so indefinite and uncertain that it is not a sufficient statement on which to base a finding.''

The demand was not attacked by motion or otherwise prior to the trial in the circuit court and the point first was raised by an objection to the introduction of evidence. No formal pleadings are required in the presentation of demands for allowance in the probate court and if the demand presented be sufficient to advise the opposite party of the nature of the claim and to bar another action on the same cause all other defects will be cured by the defendant if he suffers the case to go to trial on the merits, without attacking the demand. [Rassieur v. Zimmer, 249 Mo. 175; Iba v. Railroad, 45

Mo. 469; Bronze Co. v. Doty, 99 Mo. App. l. c. 198; Christianson v. McDermott, 123 Mo. App. l. c. 455; Jarrett v. Mohan, 142 Mo. App. 29.]

It cannot be said with any show of reason that the instant judgment would not be a complete bar to another action for services and for advances made by plaintiff on account of board and provisions and this being so, defendant failing to raise the point of indefiniteness or uncertainty in the statement at the proper time and in the proper manner, is in no position to complain.

It is argued by defendant that the evidence shows conclusively that the decedent was *in loco parentis* to plaintiff during the period in which the alleged services were rendered and fails to show the existence of a contractual agreement or understanding that the services were not to be performed gratuitously, out of filial love and reverence, but were to be compensated. Defendant offered no evidence but relies on the testimony of some of the witnesses from which it is argued that the decedent, in his lifetime, went no further than to give voice to his gratitude for the kindness of plaintiff and to his voluntary intention to bestow a testamentary bounty upon his benefactor.

But we find ample evidence in the record to support an inference that the parties had a mutual and often expressed understanding that the services were not gratuitous but were to be adequately compensated. They were not allowed by the parties to remain entirely in the field of sentiment but were made the subject of a contractual agreement under which plaintiff was to serve his employer faithfully and, in turn, was to be paid for what he had done. Grant that the parties did not intend that payment should be made during the lifetime of the employer, if they mutually intended that the services were to be paid for in some way out of the estate of the recipient, we say as we

192MA7

did in the case of Christianson v. McDonald, supra, that "we are at a loss to know why, if a remuneration was expected and promised for the services, plaintiff would not be entitled to it, although she did not get it in the form so expected." The only question in such cases is whether the parties intended the services to be gratuitous, or performed for hire, and we find the evidence amply supports the conclusion expressed in the verdict that plaintiff was to be paid.

Nothing we have said is in conflict with the cases relied upon by defendant. [Bircher v. Boemler, 204 Mo. 562; Erhart v. Dietrich, 118 Mo. 418; Snyder v. Free, 114 Mo. 360; Morris v. Barnes' Admr., 35 Mo. 412; Hart v. Hart's Admr., 41 Mo. 441; Aull Savings Bank v. Aull's Admr., 80 Mo. 199; In re Helpbringer, 175 Mo. App. 325; Brand v. Ray, 156 Mo. App. l. c. 630; Crowley v. Dagley, 174 Mo. App. 561.]

We have sufficiently answered objections urged against the rulings of the court on instructions. The case was tried without prejudicial error.

Judgment affirmed. All concur.